WALTER READE, PROSECUTOR, v. CITY OF ASBURY PARK, A. GRACE KING, CITY CLERK, AND EDWARD T. MITCHELL, RESPONDENTS.

Argued January 7, 1925—Decided March 26, 1925.

1. The act entitled "An act to authorize cities bordering on the Atlantic ocean to purchase the lands in any such city bordering on the ocean and adjacent lands thereto in said city for public purposes, and to improve the same and to issue bonds for such purposes," approved March 23d, 1900 (*Pamph. L.* 1900, *p.* 285), and its amendments (*Pamph. L.* 1904, *p.* 199, and *Pamph. L.* 1919, p. 604), are operative in all cities of the class named therein, notwithstanding the Home Rule act (*Pamph. L.* 1917, *p.* 319) and the Walsh Commission Government act. *Pamph. L.* 1911, *p.* 462.

2. In cities named in the foregoing statutes (*Pamph. L.* 1900, *p.* 285; *Pamph. L.* 1904, *p.* 199; and *Pamph. L.* 1919, *p.* 604), operating under the Walsh Commission Government act (*Pamph. L.* 1911, *p.* 462), all powers and duties of the public grounds commission are transferred to, and are to be exercised and performed by, the board of commissioners of such city.

3. The power to lease any portion of the grounds or buildings over which the public grounds commission or the board of commissioners of the city have control, may be exercised without advertisement or public letting, and need not be to the highest responsible bidder, but may be "for any special term, not exceeding five years;" "for any purpose not inconsistent with the laws governing such city," and "for such rental or return" as the public grounds commission or the board of commissioners of such city "may deem for the best interest of said city."

On *certiorari*.

Before Justices KALISCH, BLACK and CAMPBELL.

For the prosecutor, *Ward Kremer* and *Herbert J. Hannoch*.

For the respondents, *John Milton* and *James D. Carton*.

The opinion of the court was delivered by

CAMPBELL, J. Proceedings of the board of commissioners of Asbury Park for the leasing to Edward T. Mitchell of the

bath houses, swimming pools, &c., in that city are before us for review.

The leasing to Mitchell was authorized by resolution at a meeting of the board of commissioners, held November 18th, 1924, without invitation by advertising for public, competitive bidding. Mitchell's offer was at the rate of $85,000 per year for a period of five years, from January 1st, 1925. Prosecutor submitted an offer of $75,000 per year "and fifty per cent. of the net profits that the plant makes above $75,000 per year."

Asbury Park, being a seaside or summer resort "binding on the Atlantic ocean," is a fourth-class city. *Comp. Stat., p. 956, § 1338.*

In 1915 it adopted the provisions of the Walsh act. *Pamph. L.* 1911, *p.* 462. The last election for commissioners was in 1923, and the organization meeting of such commissioners was held May 15th, 1923. At such meeting Walter Taylor was appointed and designated as the director of the department of parks and public property, and the duties assigned to him pursuant to the aforesaid act were so assigned by resolution, and in the following language: "* * * that all matters relating to the public grounds and parks east of Ocean avenue, and comprising the beach front property, shall be assigned to the department of parks and public property."

The prosecutor insists that the city commissioners did not comply with the provisions of the statute in awarding the lease because such leasing could only be after public advertisement, and then only to the highest responsible bidder, and, furthermore, that the award must be by ordinance and not by resolution. These contentions are rested upon section 6 of the Walsh act, *supra,* and section 13, article 36 of "An act concerning municipalities" (*Pamph. L.* 1917, *p.* 319), known as the Home Rule act. These statutes would sustain prosecutor's contentions except for the fact that we do not think they apply to the matter before us. Our reason for so concluding is that the properties which are the subject of

the present inquiry were secured by the city under an act entitled "An act to authorize cities bordering on the Atlantic ocean to purchase the lands in any such city bordering on the ocean and adjacent lands thereto in said city for public purposes, and to improve the same and to issue bonds for such purposes." *Pamph. L.* 1900, *p.* 285. This act places the entire control of such properties in a public grounds commission, to consist of three freeholders of the city, and the letting is entirely within the judgment and discretion of such commissioners, except that the term shall not be longer than three years. There is no public competitive bidding required, nor any requirement that the letting shall be to the highest responsible bidder.

And we think, therein, a clear legislative intent can readily be found, in that in dealing with such properties the interests of the city would not necessarily be best served by the price obtained, but that the method and manner of conducting such places and concessions at a high standard would be a matter of as great importance as that of revenue.

This statute was enacted in 1900, the Walsh act in 1911 and the Home Rule act in 1917.

In 1919 (*Pamph. L.* 1919, *p.* 604) the act of 1900, page 285, *supra,* was amended, clearly showing the intention of the legislature, we think, to make it operative, to the exclusion of any provision of the Walsh act and Home Rule act bearing upon the same subject in the class of municipalities to which it applies, of which class Asbury Park is one. This conclusion is made more certain by the fact that at the time of the passage of the Home Rule act a repealing act was adopted, specifically repealing some two thousand statutes, the provisions of which had been incorporated in the Home Rule act, or were repugnant thereto, but the act of 1900, page 285, was not included in the acts so repealed.

Upon this point we conclude, therefore, that the statutes (*Pamph. L.* 1900, *p.* 285, and *Pamph. L.* 1919, *p.* 604) apply, and the letting need not be by ordinance nor upon a public letting, after advertisement, to the highest responsible bid-

der, the amendment of 1919 particularly providing that the leasing be "for such rental or return as they (the public grounds commission) may deem for the best interest of said city."

In our judgment there is a further reason why section 6 of the Walsh act, *supra,* does not apply, and that is that the leasing here under review is not a franchise such as is dealt with and regulated by said section.

The next ground of attack is that the lease, as executed, is in excess of the authorization of the commissioners because such authorization was for a "renewal" of Mitchell's lease, and, "under the present specifications," which means the specifications attached to the 1919 lease, while the specifications annexed to the lease in question provide for higher bathing rates, &c. To this, however, we attach no importance because of the fact that there is testimony that certain rates were increased during 1924, and there is nothing before us to show that the lease, as executed, is not in accordance with the bargain of the parties. It must here be kept in mind that we have already held that competitive bidding was not required.

. The next contention is that, although the acts 1900, page 285, and 1919, page 604, *supra,* apply and control, the discretion granted by these acts was abused. and the awarding of the lease to Mitchell amounted to a willful and fraudulent diversion of the city's property.

We fail to find this established. The bid of prosecutor is such as not, necessarily, to make it more advantageous financially to the city than that of Mitchell.

The final reason urged is that the proceedings authorizing the lease are invalid because they were taken in opposition to the director of parks and public property, and, having to do with property assigned to that department, the entire control thereover, including the leasing thereof, was solely and exclusively in Commissioner Taylor, the director of said department.

We do not so conclude. Under the Walsh act all duties, legislative, executive, judicial and administrative, are lodged

in the board of commissioners, and such duties may, by the board of commissioners, be distributed amongst the several departments enumerated in the act, and that was done at the organization meeting of May, 1923, but we think such delegation to the director of the department of parks and public property did not carry with it the power to lease the property in question.

We think there is a clear intent shown in the act of 1919, page 604, *supra* (which, with the act, it is amendatory of 1900, page 285, we have held controls), to place in the board of commissioners the duties and powers fixed and granted by such act. The language of the amendment of 1919 is, "* * * said commissioners of such city or the duly authorized officials, now or hereafter performing the duties of said commissioners, are hereby authorized to lease, rent or hire for any special term, not exceeding five years, any part of the property so acquired, for any purpose not inconsistent with the laws governing such city, as in their judgment they may deem proper for the improvement of the place and for such rental or return as they may deem for the best interest of said city * * *."

As has been shown, the act of 1900, page 285, provides for a public grounds commission to manage and control such public properties. By the adoption of the Walsh act in Asbury Park, such committee was abolished, and its duties and functions fell upon the board of commissioners, unless, pursuant to such act, said commissioners appointed a subordinate board in place of the public grounds commission.

There is nothing before us showing the appointment of a subordinate board for this purpose, and, therefore, the board of commissioners acts and functions in the place and stead of the defunct public grounds commission.

Furthermore, in the act of 1900, page 285, and its amendments of 1904, page 199, and 1919, page 604, the members of the public grounds commission are referred to as "commissioners," and we think that the language in the 1919 act, "commissioners of such city," refers to the members of

the public grounds commission and not to the board of commissioners of a city operating under the Walsh act, because the act applied to all fourth-class cities, and not to Asbury Park exclusively. There may have been, in 1919, such cities, other than Asbury Park, and which were not operating under the Walsh act; others might thereafter come into existence, and those then existing and operating under the Walsh act might, in the future, go back to their charter form of government. The legislative purpose was to make the amendment applicable to all fourth-class cities.

The undoubted intention of the legislature, by this amendment, was to leave the control of such properties, in cities of the fourth-class not operating under the Walsh act, in the public grounds commission, referring to the members thereof as the "commissioners of said city," and in fourth-class cities, then or thereafter operating under the Walsh act, in the board of commissioners of such city or such subordinate board or body, as they should appoint or set up in place of the said public grounds commission, referring to such board of commissioners or other subordinate board or body as the "* * * duly authorized officials now or hereafter performing the duties of said commissioners;" such being appropriate language to make such amendment apply to fourth-class cities operating under the Walsh act.

Finding no error or legal irregularity in the proceedings, the writ of *certiorari* is dismissed, with costs