WHIRL-O-BALL, INC., A BODY CORPORATE, LAURA APOS-TOLOS, GEORGE K. APOSTOLOS AND GEORGE N. BREM-BOS, PROSECUTORS-RESPONDENTS, v. CITY OF ASBURY PARK, A MUNICIPAL CORPORATION IN THE COUNTY OF MONMOUTH, AND BENJAMIN A. CARDILLA, DE-FENDANTS-APPELLANTS.

Argued May 22, 1947—Decided October 31, 1947.

For the appellant Benjamin A. Cardilla, *Thomas F. Shebell.*

For the appellant City of Asbury Park, *Charles Frankel* (*Milton M. Unger,* of counsel).

For the respondents, *Ward Kremer.*

The opinion of the court was delivered by

McGeehan, J. On March 19th, 1946, a resolution was adopted by the mayor and council of the City of Asbury Park, whereby certain boardwalk premises known as stores Nos. 1310-16 Boardwalk were leased by the defendant city to the defendant Benjamin A. Cardilla, trading as Convention Hall Amusements, for a term of three years commencing January 1st, 1946, and ending December 31st, 1948, at an annual rental of $8,200. The prosecutor-respondent Whirl-O-Ball, Inc., in which the individual prosecutors are stockholders, occupied the premises under a lease from the city, which expired December 31st, 1945, and had been in continuous occupation for thirteen years. Prior to the meeting of the mayor and council on March 19th, 1946, six written bids for a new lease for the premises in question had been submitted and of these, the bid of Convention Hall Amusements (Benjamin A. Cardilla) was the highest. Among the six bids was one by Whirl-O-Ball, Inc., by George K. Apostolos (corporate and individual prosecutors herein); another by The Social Hour, Inc., by Laura Apostolos (one of the individual prosecutors herein), and still another by L. & G. Company, by Laura Apostolos (one of the individual prosecutors herein). It is stipulated that the letting was not advertised in any newspaper prior to the receipt of proposals. The Supreme Court granted a writ of *certiorari* to review the resolution of March 19th, 1946, and entered judgment which set aside this resolution. From this judgment of the Supreme Court, the City of Asbury Park and Benjamin A. Cardilla appeal.

Appellants contend here, as they did below, that Asbury Park in passing this resolution had five different acts included in the Revised Statutes, under any one of which it was empowered to act: (1) *R. S.* 40:179–116 (compiled—source *Pamph. L.* 1900, *ch.* 99, § 4, as amended by *Pamph. L.* 1919, *ch.* 252), which does not require advertising; (2) *R. S.* 40:176–17 (compiled—source *Pamph. L.* 1925, *ch.* 248), which does not require advertising; (3) *R. S.* 40:61–1.g (revised—source Home Rule Act, *Pamph. L.* 1917, *ch.* 152, *art. XXXVI,* § 13, as amended by *Pamph. L.* 1933, *ch.* 355), which does not require advertising; (4) *R. S.* 40:61–1.h

(revised—source same as (3)), which requires advertising, and (5) *R. S.* 40:61–36 to 41, inclusive (revised—source *Pamph. L.* 1937, *ch.* 172), which requires advertising. They argue that these five acts provide alternative procedures and all are still in effect. Since Asbury Park did not advertise, appellants claim that its resolution was authorized under the three separate acts mentioned above which permit such action without advertising. The Supreme Court held that "*R. S.* 40:61–36; *et seq., Pamph. L.* 1937, *ch.* 172, is dispositive of the issue" and since it (*R. S.* 40:61–40) provides "Any such letting shall be advertised in some newspaper circulating in the municipality at least ten days prior to the receipt of bids" the admitted failure to advertise was fatal and set aside the resolution. Although the Supreme Court does not explicitly hold that *R. S.* 40:61–36 to 41, inclusive, repeals the other four statutes which otherwise might be effective, such holding is implicit in the result.

At the outset it should be noted that there is a difference betwen statutes "revised" in the Revised Statutes and those merely "compiled." Statutes "revised" were re-enacted as of December 20th, 1937, and received new force and validity as of that date, but statutes merely "compiled" were not re-enacted and, as provided in *R. S.* 1:1–21, "shall have operative force and effect only to the extent that they were operative and effective at the time of taking effect of the Revised Statutes. Such acts or parts of acts shall not be deemed repealed by the enactment of the Revised Statutes, except.so far as they are inconsistent with the provisions of the Revised Statutes but, in so far as they may have been so repealed or have been superseded or impliedly repealed by legislation subsequent to their enactment, they shall remain so superseded or repealed and shall have no further or additional effect because of their inclusion in the Revised Statutes as aforesaid." The reason for compilation, instead of revision, of the laws concerning cities is stated in the Report of the Law Revision Commissioners in Volume IV of Revised Statutes, page 20, as follows:

"In a limited number of instances the Commissioners found that revision and consolidation was wholly impossible without

making substantive changes of moment, notably the legislation with respect to cities, and they were obliged to include in this revision the legislation compiled rather than revised and consolidated. That legislation alone takes up approximately two hundred pages of the revision. It should be revised and consolidated but we do not believe that it can be except by a Commission upon which there is legislative representation."

The chaotic condition of the legislation concerning the powers of cities, which made revision thereof by the Revision Commission impossible, must be kept in mind when seeking the intention of the legislature in the language used in *Pamph. L.* 1937, *ch.* 172, and later used when that statute was revised in *R. S.* 40:61–36 to 41, inclusive.

If *R. S.* 40:179–116 (compiled—source *Pamph. L.* 1900, *ch.* 99, § 4, as amended by *Pamph. L.* 1919, *ch.* 252) was in effect at the time of the passage of the resolution in question, Asbury Park was authorized to pass such a resolution without prior advertising. We restrict our inquiry then to two questions. In considering these questions, certain canons of construction come into play. That the legislature has power to pass cumulative legislation, needs no citation of authority. The court's power to determine that a later act repeals, by implication, a former act, rests upon the theory of legislative intent. *Southerland Statutory Construction* (3d ed.), § 2006. The rule that a later act repeals, by implication, that which is inconsistent with it in an earlier one is, however, but the expression of an intention presumed to be entertained by the legislature in making the law. As such it is, of course, negatived and rendered inoperative by the expression of a contrary intention in the later statute. *Endlich on the Interpretation of Statutes,* § 193. It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both, if possible. The intention of the legislature to repeal must be clear and manifest. It is not sufficient to establish that subsequent laws cover some or even all of the cases provided for by the prior act; for they may be merely affirmative or cumulative or auxiliary. *United States* v. *Borden,* 308 *U. S.* 188 (at *p.* 198). As the legisla-

tive intent defines the operation of the statute and divulges the purposes and limitations of the enactment, it may establish or deny a repeal by implication, and therefore in the process of construing a statute, the intent of the legislature is always of prime importance. *Southerland Statutory Construction* (*3d ed.*), § 2012. Where the repealing effect of a statute is doubtful, the statute is to be strictly construed to effectuate its consistent operation with previous legislation. *Southerland Statutory Construction* (*3d ed.*), § 2014.

## FIRST QUESTION.

Was this 1900 act repealed or superseded by legislation subsequent to its enactment?

Prior to the enactment of *Pamph. L.* 1937, *ch.* 172, the 1900 act was undoubtedly in effect. This very question was determined in *Reade* v. *Asbury Park,* 101 *N. J. L.* 319; *affirmed,* 102 *Id.* 221. The Reade case involved the leasing of boardwalk premises by the City of Asbury Park, and in that case the same objection was raised as is now raised in this case; namely, that leasing was unlawful because it was not advertised as required by law. The Reade case involved the construction of *Pamph. L.* 1900, *ch.* 99, as amended by *Pamph. L.* 1919, *ch.* 252, and the provisions of the Home Rule Act, *Pamph. L.* 1917, *ch.* 152, *art. XXXVI,* § 13. The 1900 act permitted the letting without a requirement of advertising, and the Home Rule Act permitted the letting but required advertising. In the Reade case the Supreme Court held that the advertising requirement included in the Home Rule Act did not supersede the provisions of the 1900 act as amended in 1919, and therefore the letting could be without advertising, since the 1900 act had no such requirement; and the Court of Errors and Appeals affirmed on the opinion below. It is to be noted that the legislature, after the decision of the Supreme Court in the Reade case, and while the case was on appeal to the Court of Errors and Appeals, enacted *Pamph. L.* 1925, *ch.* 248 (now *R. S.* 40:176–17), which applied to fourth class cities, and thus applied to Asbury Park and authorized such a letting without any requirement

of advertising. *Pamph. L.* 1925, *ch.* 248, was passed over the Governor's veto, which was based upon the fact that the proposed law would dispense with public advertising in the letting of boardwalk concessions by fourth class cities. The 1925 act was passed by the legislature with the obvious intent to insure that Asbury Park and other fourth class cities could let such boardwalk properties without advertising from 1925 on, even though the Court of Errors and Appeals should reverse the Supreme Court holding in Reade *v.* Asbury Park, which was then before it.

With this background, *Pamph. L.* 1937, *ch.* 172, was enacted. It provides "The governing body of every municipality bordering on the Atlantic Ocean may lease, rent or hire * * *;" that "Any such letting shall be advertised in some newspaper circulating in the municipality at least ten days prior to the receipt of bids," and that "The power conferred herein is in addition to those given by any other act or acts." The language last quoted was apparently overlooked by the Supreme Court. This language is clear, its intent is obvious, and it is a complete bar to any construction of the 1937 act, which will result in any subtraction of municipal power theretofore given by any other act or acts. Consequently, the power conferred by the 1900 act was not in any way restricted by the passage of *Pamph. L.* 1937, *ch.* 172.

## Second Question.

Was the 1900 act repealed or superseded by the passage of the Revised Statutes?

The Revised Statutes included *Pamph. L.* 1937, *ch.* 172, as article 3 of chapter 61 of title 40 under the section numbers *R. S.* 40:61–36 to 41, inclusive. *R. S.* 40:61–41 now provides "The power conferred in this article is in addition to those given by any other law or laws." The 1900 act is compiled in the Revised Statutes as *R. S.* 40:179–113, *et seq.* The language of *R. S.* 40:61–41 continues the bar which was contained in *Pamph. L.* 1937, *ch.* 172, and prevents any construction of *R. S.* 40:61–36 to 41, inclusive, which will result in any subtraction of municipal power theretofore given by

any other act or acts. Therefore, the 1900 act was in effect when Asbury Park passed the resolution in question.

The judgment of the Supreme Court is reversed.

BURLING, J. (Dissenting.) The question here is within a very narrow compass. Was the governing body required to advertise prior to the receipt of bids and make the award to the highest responsible bidder?

The latest expression of the legislature on the subject, prior to the revision, is found in *Pamph. L.* 1937, *ch.* 172 and now found in *R. S.* 40:61–36 to 41, and that requires the governing body of *every* municipality bordering upon the Atlantic Ocean to advertise for bids and award the lease to the highest responsible bidder. The pertinent sections are as follows:

"40:61–36. Leasing of parks, etc. authorized. Period of leases. *The governing body of every municipality bordering on the Atlantic Ocean* may lease, rent or hire, the whole or any part of any public parks, recreation grounds or places of public resort, owned by it and not presently needed by the municipality for municipal purposes, or any building or portion thereof located therein for any period not exceeding five years." (Italics supplied.)

"40:61–39. Letting to highest bidder. Any such letting shall be to the highest responsible bidder therefor."

"40:61–40. Advertisement for bids. Any such letting shall be advertised in some newspaper circulating in the municipality at least ten days prior to the receipt of bids."

Conceding all that is contended as to the state of the law at the time the legislature proceeded to enact *Pamph. L.* 1937, *ch.* 172, "there is no safer or better settled canon of interpretation than that when language is clear and unambiguous it must be held to mean what it plainly expresses." 2 *Sutherland Statutory Construction* (3d ed.), *p.* 334.

If the plain language of the act is to be overcome by resort to the inconsistent provision of *Pamph. L.* 1900, *ch.* 99, not requiring advertising, then the lucid meaning of distinct English words is rendered inert. *Inconsistent provisions cannot stand.* There should also be applied the additional canon of construction that the legislature is presumed not to do a

vain thing and enact useless legislation. It is to be assumed that the legislature was doing more than merely restating an existing power without in any way amplifying or modifying it.

"The principle upon which subsequent legislation will operate to repeal prior legislation without an express repealing clause has been frequently considered by the courts of this state and is well defined. Where there are two acts on the same subject, the rule is to give effect to both, if possible. *If the two acts are repugnant in any of their provisions, the later act operates to repeal the earlier to the extent of the repugnancy."* (Italics supplied.) *State* v. *Vineland (Court of Chancery,* 1906), 72 *N. J. Eq.* 289 (at *p.* 290) ; *affirmed (Court of Errors and Appeals,* 1907), 72 *Id.* 862.

Stress is laid by the appellants on the necessity of giving effect to the following clause contained in the act of 1937 (*Pamph. L.* 1937, *ch.* 172—*R. S.* 40 :61–41) :

"The power conferred in this article is in addition to those given by any other law or laws."

This section has reference to the basic powers theretofore granted as distinguished from the mode or manner of the exercise of such power. The power to lease is preserved but its exercise is conditioned by the mandatory verb "shall" in sections 39 and 40 of *R. S.* 40:61, *supra. Every* such municipality *may* make such a lease, but if it chooses to do so, the letting *shall* be made to the highest responsible bidder, and the letting *shall* be advertised as therein provided. The construction given by the majority opinion renders this plain provision practically useless and meaningless and it goes without saying that it is reasonably to be presumed that the legislature intended to make some change in the law. The saving clause in the act of 1937 must, on well settled principles, be given a construction consistent with the manifest policy of the enacting clause—a construction that proceeds upon the premise that the legislature intended to do what the enacting clause provides in clear and unambiguous terms, and that language is to be given its ordinary meaning. Saving clauses and provisos and exceptions are to be strictly construed and "all doubt should be resolved in favor of the general provision rather than the proviso or exception." *New*

*Jersey State Board of Optometrists* v. *S. S. Kresge Co.* (*Supreme Court, 1934*), 113 *N. J. L.* 287; *affirmed* (*Court of Errors and Appeals, 1935*), 115 *Id.* 495; *Sutherland Statutory Construction* (*3d ed.*) §§ 4933, 4937.

All pre-existing basic powers are preserved intact but the prior inconsistent procedural provisions must give way to those provided in the act of 1937 as now contained in *R. S.* 40:61–35 to 41. This construction does not do violence to said section.

The act applies to municipalities bordering on the Atlantic Ocean, whether they be boroughs, townships or cities. It is presumed that the act was aimed at good government and to prevent evils which might flow from such lettings without advertisement and public notice and to one not the highest bidder. The contention that this cloak of protection was to be thrown about all municipalities bordering on the Atlantic Ocean excepting fourth class cities is untenable. The problems of municipalities along the Atlantic Ocean are comparable, whether they be boroughs, townships or cities. Most all of them have their boardwalks, beach fronts, buildings erected with taxpayers' money, and other privileges which they let out for revenue and thus lessen the taxpayers' burden. It is illogical to conclude that fourth class cities were to be excluded from the benefits conferred by such an act upon all other seashore municipalities.

The 1937 act (chapter 172) is found in *R. S.* 40:61–36 to 41 and as a revised statute under the general classification of Municipalities, chapter 51, subtitle Public Parks and Playgrounds, under article 3 thereof entitled "Lease by Municipalities bordering on the Atlantic Ocean," whereas the act of 1900, chapter 99, as amended in 1919, chapter 252, is found in *R. S.* 40:179–116, but not as a revision but only as a part of a compilation under the classification: Subtitle 13 Cities (Compilation). The provisions of the 1937 act chapter 172 should therefore gain force and effect by virtue of such treatment in the revision, as the revision is a wholly independent enactment and supersedes all pre-existing general laws. *State* v. *Czarnicki* (*Supreme Court, 1940*), 124 *N. J. L.* 43; *Duke Power Co.* v. *Somerset County Board of Taxa-*

*tion* (*Court of Errors and Appeals,* 1940), 125 *Id.* 431 (at p. 433).

The act of 1925 (chapter 248—*R. S.* 40:176–17), the second act upon which the city also relies for its failure to advertise is found in the category of a compilation. It is generally comparable to the 1900 act as amended in 1919 and further in view of the history of its enactment, statements herein relating to the 1900 act are applicable thereto.

The third act, *R. S.* 40:61–1.g (under the caption of chapter 61 "Public Parks and Playgrounds Article I. In a single municipality") upon which the city also relies is not properly construed in the briefs of the appellants for the following reason:

The original act of 1933 is as follows:

"Chapter 355. An Act to amend an act entitled 'An Act concerning municipalities.'

"BE IT ENACTED BY THE SENATE AND GENERAL ASSEMBLY OF THE STATE OF NEW JERSEY:

"1. Section thirteen of the act to which this act is amendatory is hereby amended to read as follows:

"13. The governing body of every municipality may lease, rent or hire, any part of any public resort, owned by it and not presently needed for the purpose for which it was acquired, or any building, or portion thereof thereon not so needed, for any period not exceeding five years. The governing body may let out to any person or persons, corporation or corporations, any privileges in any public park or place of public resort, upon such terms and conditions as it may prescribe; and upon the violation of the terms upon which any lease or privilege is granted, the same shall become void, and said governing body shall have power to so declare, and may re-enter any place so leased and prevent the exercise of any privilege so forfeited; any such letting shall be to the highest responsible bidder therefor. *The letting thereof shall be advertized in some newspaper circulating in the municipality at least ten days prior to the receipt of bids.*

"2. This act shall take effect immediately.

"Approved June 27, 1933."

In the Revised Statutes this act is divided arbitrarily into two parts which read as follows:

"40:61–1.g. Lease, for any term not exceeding five years, any part of any public resort and recreation place owned by the municipality and any building thereon, or part thereof, not presently needed for such use; *and*

\*     \*     \*     \*     \*     \*     \*

"h. Let out and rent any privilege in any of its parks, beaches, water fronts and places for public resort and recreation, to the highest responsible bidder therefor, after advertisement of the time and place of such letting, at least ten days prior to the receipt of bids, in a newspaper circulating in the municipality, and upon such terms and conditions as it may prescribe. Upon the violation of the terms upon which any lease or privilege is granted, the same shall become void, and said governing body may so declare, and may re-enter any place so leased and prevent the exercise of the privilege so forfeited." (Italics supplied.)

The source material is stated as follows: Pars. g. h., L. 1917, c. 152, Art. XXXVI, § 13, p. 455 (1924 Suppl. § *136-3613), as am. by L. 1933, c. 355 § 1, p. 958.

While the revision is a wholly independent enactment and supersedes all pre-existing general laws, nevertheless it is the rule that a re-arrangement of the statutes in a general revision of the law does not usually change the statute's significations. *R. S.* 1:1–5 provides as follows:

"1:1–5. Classification and arrangement; effect on construction. The classification and arrangement of the several sections of the Revised Statutes have been made for the purpose of convenience, reference and orderly arrangement, and therefore no implication or presumption of a legislative construction is to be drawn therefrom."

The paragraphs "g" and "h" are therefore to be read to-together and advertising is required. They are presently applicable and not inconsistent with the act of 1937 chapter 172 but rather in harmony therewith. The Supreme Court so held in an opinion delivered by Mr. Justice Eastwood and concurred in by Mr. Justice Parker and Mr. Justice Donges.

The enactment of the later act of 1933 chapter 355 removes the effectiveness of the *Reade* v. *Asbury Park* opinion (*Supreme Court, 1925*), 101 *N. J. L.* 319; *affirmed (Court of Errors and Appeals, 1925)*, 102 *Id.* 221, relied upon by the appellants by the same reasoning in which the Reade opinion deleted the effect and applicability *at that date* of the original Home Rule Act of 1917, chapter 152, namely, resulting from the effect of the then later act, *Pamph. L.* 1919, chapter 252, amendment to the 1900 act chapter 99.

Even on the contrary assumption, the result would be the same. In the case of *Reade* v. *Asbury Park, supra,* it was held that the Home Rule Act of 1917 would require advertising and an award to the highest bidder were it not for the fact that the properties there involved were "secured by the city under" the act of 1900, *supra,* providing for a bond isuse to pay for the purchase or improvement of lands acquired for the purposes therein authorized, and the amendment of 1919, *supra,* reveals an intention to make the act operative to the exclusion of the provisions of the Home Rule Act bearing upon the same subject. Such being the case, there would be no reason whatever for the act of 1937, *supra,* unless it was intended to apply to cities of the fourth class.

For the aforesaid reasons, I vote to affirm the judgment below.

Mr. Justice Heher and Judges Wells and McLean authorize me to say that they agree with the views expressed herein.

*For affirmance*—HEHER, BURLING, WELLS, MCLEAN, JJ. 4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, COLIE, WACHENFELD, DILL, FREUND, MCGEEHAN, JJ. 8.