PAUL G. De MURO, PROSECUTOR, v. NICHOLAS MARTINI, JULIUS CINAMON, THADDEUS A. BARSZCZ AND CITY OF PASSAIC, RESPONDENTS.

Argued May 5, 1948—Decided September 13, 1948.

Before CASE, CHIEF JUSTICE, and Justice BURLING.

For the prosecutor, *Heller & Laiks* (*Aaron Heller,* of counsel).

For the respondents, *Thomas E. Duffy* and *Nicholas Martini.*

The opinion of the court was delivered by

BURLING, J. This writ of *certiorari* was allowed to review a resolution adopted by a majority vote of the Board of Commissioners of the City of Passaic passed November 18th, 1947, which resolution purports to settle the claim for architectural services of one Percy Simon against the City of Passaic for the sum of $37,000 and authorized the proper officials of the city to pay that sum to Simon upon receipt of his release. The prosecutor is the Mayor of the City of Passaic and a member of the Board of Commissioners. The original respondents are the three members of the Board of

Commissioners who voted in favor of the said resolution. By an order amending the writ dated April 14th, 1948, the Board of Commissioners of the city as a body was added. The City of Passaic is governed by five commissioners under the Walsh Act (*R. S.* 40:70–1, *et seq.*).

The claim in question was made by Simon in the amount of $63,810 for architectural services rendered to the city in connection with a Veterans' Permanent Housing Project estimated to cost $1,433,490, and undertaken by the city and the State of New Jersey, pursuant to chapter 323 of the laws of 1946 (*R. S.* 55:14G–1, *et seq.*) and the amendments thereof. On January 21st, 1947, a resolution was adopted by the then Board of Commissioners declaring an emergency existed and proposing the city join with the state in the above project. On the same day a resolution was adopted authorizing the then mayor and the city counsel to acquire a site and providing:

"Resolved that the Mayor and City Counsel be and they are hereby authorized to negotiate for the acquisition of whatever property may be needed to provide the necessary site in the vicinity of River Road and Westervelt Place for the proposed Permanent Veterans' Housing Project, and to report back the results of such negotiations to the Board of Commissioners.

"Be it further Resolved that the Mayor be and he is hereby authorized to do any and all things necessary to consummate the plan for proposed permanent veterans' housing he submitted to the Public Housing Development Authority in the State Department of Economic Development and the Board of Commissioners; and to obtain the grant of state funds for said project."

As the Board of Commissioners was constituted, the respondent Martini was the Mayor and Director of Public Works and the prosecutor, De Muro, was Director of Revenue and Finance. Subsequently following an election held in May, 1947, the present Board of Commissioners met and organized on May 20th, 1948, at which time the prosecutor was named Mayor and Director of Public Works and the respondent Martini became Director of Public Affairs. The

housing project, over which the controversy arose lies within the jurisdiction of the Department of Public Works. In order to qualify for and obtain the grant it became necessary to submit architect's preliminary sketches and final plans and specifications together with other data required by the state agency.

On January 21st, 1947, pursuant to the above resolution, the respondent Martini addressed a letter to one Percy Simon, an architect, purporting to engage him for the purpose of preparing preliminary sketches and final plans and specifications for two hundred families, setting forth the compensation to be received by Simon, which compensation was set at five per cent. of the total cost of construction and giving other and further details of the employment. On the same date Simon acknowledged in writing the receipt of the letter and agreed to the terms thereof. Thereafter the work was commenced on the project with Simon in charge.

This letter of employment and acceptance memorandum endorsed thereon was filed in his office and later on May 20th, 1947, and prior to the expiration of the terms of office of the Commissioners filed with the city clerk.

Subsequent to the re-organization of the Commission an ordinance was adopted authorizing the city's share of financing the project and specifically mentioning the plans and specifications of Simon. This ordinance was voted upon and adopted unanimously, including the affirmative vote of the prosecutor. Bids were received and a report and analysis of the same was filed by the architect with the Commissioners. Contracts for construction were awarded.

The prosecutor now contends that the original contract of employment was an illegal one. It may be mentioned, however, that during the conference of the Commissioners hereinafter referred to in attempting to arrive at the amount of settlement, no such contention was raised by the prosecutor. The city had recognized and accepted the service of Simon. The plans drawn by Simon were the basis for a state grant. As a result of the action of Martini and of the City Commissioners and Simon, a valid contract existed between the city and Simon.

On July 23d, 1947, the architect was relieved of his duties and his contract terminated. This action was by resolution of the Board of Commissioners in which the prosecutor joined the majority and seconded the motion to discharge. The architect advised the board that he objected to the termination of the contract and engaged an attorney who made claim on his behalf for compensation in the sum of $63,810 plus five per cent. of all additional amounts and threatened suit unless the sum was paid. Several conferences were held between counsel for the city and the attorney for the architect, and then at least four meetings were held with the Board of Commissioners sitting as a committee of the whole in which the prosecutor participated. The city counsel rendered an opinion wherein he considered the architect was entitled to some compensation and that the matter in dispute was as to the amount due. As a result of the negotiations the resolution in question was passed to settle the claim in the amount of $37,000 with the prosecutor and one other of the commissioners voting in the negative and the majority of the board in the affirmative.

Prosecutor further contends that the resolution of settlement was illegal because the matter lay within the Department of Public Works and that as its director he had the sole power of adjusting the matter in that department.

We think that this power rests in the Board of Commissioners and can be fairly spelled out from the provisions of the Walsh Act.

Although the statute requires that the legislative, executive and judicial powers be distributed among the Commissioners, yet there are some powers which are reserved to the board as a whole, for example the passage of resolutions and ordinances.

If it was not obvious that the settlement of a claim against the city was included in the reserved powers the provisions of the Home Rule Act completely put the matter at rest. This statute which was originally chapter 152 of the laws of 1917 and is now included in the Revised Statutes as *R. S.* 40 :42–1, *et seq.,* applies to all municipalities in the state. *Reade* v. *Asbury Park* *(Supreme Court,* 1925), 101 *N. J. L.* 319; *affirmed (Court of Errors and Appeals,* 1925), 102

*Id.* 221; *Simon* v. *O'Toole* (*Supreme Court,* 1931), 108 *Id.* 32; affirmed (*Court of Errors and Appeals,* 1931), 108 *Id.* 549; *Shedden* v. *Hagmann* (*Supreme Court,* 1942), 128 *Id.* 200. That statute provides for the payment of a claim over the executive's disapproval as follows:

*R. S.* 40:48–17—"The board or body presenting any claim for approval, may by majority vote of all its members order the payment thereof, notwithstanding the disapproval of the mayor or other chief executive officer, in which case it shall be paid and proper warrant issued therefor, in the same manner as other bills are paid."

This statute is operative in all municipalities unless the governing body has by ordinance provided another method of approving claims. *R. S.* 40:48–13. The record in the instant case does not disclose such an ordinance in the City of Passaic and the statute is accordingly deemed operative.

It appears that Simon at the time of the resolution now questioned had a *prima facie* claim against the city which he could resort to legal action to enforce. *Stout* v. *Bayonne* (*Supreme Court,* 1937), 15 *N. J. Mis. R.* 672; affirmed (*Court of Errors and Appeals,* 1938), 120 *N. J. L.* 242. At the time the Board of Commissioners adopted the resolution in question they were faced with the imminence of litigation over this claim and were advised by the city counsel that the threatened law suit was one in which the municipality would probably be unsuccessful. This situation culminated a period of negotiations with Simon and his counsel in which the prosecutor participated and in which his only and apparent dissent was not the validity of the claim or a settlement but the amount to be paid thereunder.

The statute is applicable to the instant case and the settlement of this claim by the board was valid.

Prosecutor further contends that the resolution in question violated *R. S.* 40:74–1 which states:

"Except as otherwise required or permitted by law, every ordinance or resolution appropriating money, or ordering any street improvement or sewer, or authorizing the making of a contract or granting any franchises, or the right to

occupy or use the streets, highways, bridges, or public places of the municipality for any purpose, shall be complete in the form in which it is finally passed and remain on file with the municipal clerk for public inspection at least two weeks before the final passage or adoption thereof. No franchises, or right to occupy or use the streets, highways, bridges or public places in any municipality shall be granted, renewed or extended except by ordinance."

This view overlooks the fact that this resolution is not an appropriation but the payment of a claim and is therefore governed by *R. S.* 40:48-17 hereinbefore referred to. *State* v. *Sofroney (Supreme Court,* 1931), 9 *N. J. Mis. R.* 756; *Simon* v. *O'Toole, supra; Stout* v. *Bayonne, supra.*

The writ of *certiorari* is discharged, with costs.