39 N.J. Super. 366 (1956)
121 A.2d 43
CHESTER R. SWEDE AND RAYMOND DE LUCA, PLAINTIFFS-APPELLANTS,
v.
CITY OF CLIFTON AND DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 20, 1956.
Decided February 24, 1956.
*369 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Mervyn R. Montgomery argued the cause for appellants (Mr. John G. Dluhy, attorney).
Mr. John C. Barbour argued the cause for respondent City of Clifton.
Mr. John F. Crane, Deputy Attorney-General, argued the cause for respondent Department of Civil Service (Mr. Grover C. Richman, Jr., Attorney-General, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Disaffected because the Acting City Manager of Clifton passed over their names on the certified list of policemen eligible for appointment to the position of sergeant, plaintiff policemen appealed to the Civil *370 Service Commission. The Commission sustained the action taken and dismissed the appeals. Plaintiffs thereupon took an appeal to this court pursuant to R.R. 4:88-8.
On February 14, 1955 John L. Fitzgerald, City Manager of Clifton, requested the Department of Civil Service to certify names of eligibles for appointment as sergeants in the municipal police department, two such positions being open. The Department complied on February 16, certifying the following  all of them veterans  in the order of the grades they had achieved in a previous promotional examination:

 Chester R. Swede ................... 79.406
 Ravmond G. De Luca ................. 79.097
 Philip A. Calderaro ................ 79.070
 Richard Hornby ..................... 79.027

Fitzgerald was away on a Florida vacation from February 16 to March 17, 1955. During this period the city engineer and director of public works, William Holster, was serving as acting city manager. The Municipal Council of Clifton had appointed him to that office by resolution on February 1 preceding. On February 18 Holster appointed Calderaro and Hornby, the third and fourth men on the eligible list, as sergeants, the appointments to become effective on March 1, 1955. Plaintiffs at once filed a verified petition with the Civil Service Commission, pursuant to R.S. 11:25-1, protesting that their names had been by-passed and claiming that the appointments violated the provisions of N.J.S.A. 11:27-4, were invalid as an arbitrary and discriminatory abuse of discretion by Holster and, further, were invalid because he had no power or authority in the premises. The Commission held a hearing and on June 7, 1955 decided that the provisions of the Civil Service Act had not been violated.
In their appeal from the Commission decision sustaining the action taken by the acting city manager, plaintiffs raise several legal issues which we shall consider in the order of their presentation. Only the last two directly affect the administration of the civil service laws.
*371 The first ground of appeal is that there could be no valid appointment to a non-existent office or position. Here plaintiffs argue that the Home Rule Act requires that all non-statutory municipal offices be created by ordinance; without a creative ordinance there can be no office, and without an office there can be no vacancy, and hence no appointment. Plaintiffs allege that the two positions of sergeant were never created by ordinance. There may be merit in the contention; it is true that a municipal office or position, if not created by statute, can come into being only by ordinance of the geverning body of the municipality. Handlon v. Town of Belleville, 4 N.J. 99, 108 (1950); Jersey City v. Department of Civil Service, 7 N.J. 509, 524 (1951), affirming 10 N.J. Super. 140 (App. Div. 1950).
The next ground of appeal is that a de facto appointing authority cannot appoint a de jure officer, so that the appointments in question are invalid. This is a correct statement of the existing law. Von Nieda v. Bennett, 117 N.J.L. 231 (E. & A. 1936), wherein the views first suggested by Chief Justice Beasley in Jersey City v. Erwin, 59 N.J.L. 282 (Sup. Ct. 1896), reversed sub nom. Erwin v. Jersey City, 60 N.J.L. 141 (E. & A. 1897), were reinstated, thereby directly overruling the holding in Brinkerhoff v. Jersey City, 64 N.J.L. 225 (E. & A. 1900), to the contrary, along with the line of cases which followed it. And see Annotation, 106 A.L.R. 1324.
The argument pursued by plaintiffs under this head of their appeal runs as follows. The Municipal Manager Act, R.S. 40:79-1 et seq., provides that during "the absence or disability" of the municipal manager the municipal council shall appoint "a properly qualified" person to exercise the powers and perform the duties of the office. R.S. 40:82-6. R.S. 40:82-4 sets forth the duties of a municipal manager, subsection (d) providing that the manager shall appoint and remove all department heads and all other officers, subordinates and assistants for whose selection or removal no other method is provided in the Municipal Manager Act. Since Holster himself was head of the department of public works *372 and chief engineer, and therefore subject to appointment, removal and supervision by the city manager (he was in fact so appointed), it would be a legal anomaly to say he could remove himself from office. Accordingly, the offices held by Holster were incompatible or inconsistent, citing DeFeo v. Smith, 17 N.J. 183, 189 (1955), and State ex rel. Clawson v. Thompson, 20 N.J.L. 689, 690 (Sup. Ct. 1846).
It is also claimed that the provisions of R.S. 40:81-11 authorizing the municipal council to appoint one person to two or more of the offices of municipal manager, treasurer, clerk and attorney, do not condone the dual job-holding situation here under attack. Further, if plaintiffs' contention be unsound, it must follow that the acting municipal manager could, prior to the return of the regular manager, appoint himself to any subordinate office or combination of offices over which the municipal council has no appointive or removal powers.
Plaintiffs therefore conclude there was a want of authority in the municipal council validly to appoint Holster as acting city manager. He could not qualify under R.S. 40:82-6, and so was merely a de facto officer incapable of appointing the two sergeants.
Under this second ground of appeal plaintiffs also claim that the resolution appointing Holster as acting city manager was ineffective. The resolution, adopted 15 days before the city manager departed for his vacation, read: "Resolved: That during the absences of John L. Fitzgerald, City Manager, that William Holster be designated as Action [Acting] City Manager." The effectiveness of this resolution, plaintiffs say, is thus made to depend upon some act of a third person, namely, the city manager, and thus is not a proper delegation by the municipal council of its appointing power. The enabling statute, R.S. 40:82-6, requires the municipal council to appoint an acting city manager "during the absence or disability" of the city manager. Plaintiffs submit that this section of the Municipal Manager Act contemplates that the municipal council shall, by separate resolutions, appoint an acting city manager each time the manager is *373 absent or otherwise disabled from performing his duties; it cannot, as by its February 1, 1955 resolution, provide for a continuing appointment.
In holding that the appointments made by the acting city manager were proper, the Civil Service Commission also concluded that Holster was properly appointed to and qualified to hold the office of acting city manager. As to plaintiffs' contention that the sergeant positions had never properly been created by ordinance, the Commission held it was without jurisdiction to decide such a collateral question, stating that its jurisdiction was "confined to questions relating to the constitutional requirement that appointments in the Civil Service be made according to merit and fitness and the enforcement of the various rights of personnel granted in the Civil Service Laws."
We will not pass upon either of the first two grounds of appeal which we have described at some length. The question of the existence of a position is one of fact and law to be determined by the Law Division in a proceeding in lieu of prerogative writ. And so as to the question of whether Holster was properly appointed to and qualified to hold the office of acting city manager, which goes to the issue of whether he was a de jure officer who could make a valid appointment. In fact, plaintiffs, realizing that these matters were not for the Civil Service Commission because there must be a res within its cognizance, instituted proceedings in lieu of prerogative writ in the Law Division on March 25, 1955, raising the very issues framed by the first two grounds of appeal. Swede, et al. v. City of Clifton, et al., Docket L-6331-54-PW, wherein the present plaintiffs and one Sahaydak, a Clifton taxpayer, are plaintiffs, and the municipality, Calderaro, Hornby and the city clerk are defendants.
The Civil Service Commission is a quasi-judicial statutory tribunal and possesses no jurisdiction except that which is expressly conferred by statute. City of Newark v. Civil Service Commission, 115 N.J.L. 26, 29 (Sup. Ct. 1935); Maguire v. VanMeter, 121 N.J.L. 150, 152 (E. & A. 1938); Belfer v. Borrella, 9 N.J. Super. 287, 292 (App. *374 Div. 1950). The proceedings before the Civil Service Commission were instituted pursuant to R.S. 11:25-1:
"When a board or body or public officer, official or employee of a county, municipality or school district, operating under this subtitle, violates any of the provisions of this subtitle in selecting persons for employment, or in the designation of an employee for appointment or in the suspension, removal, fine or reduction of employees from office, a citizen of this state may cause a summary review to be had of the illegal or unlawful action by presenting a petition verified by affidavit, to the commission setting forth the particulars in which it is claimed the provisions have been violated." (Italics ours)
This section confers only power to review the action of local authorities with respect to alleged violations of "this subtitle," viz., Title 11, Subtitle 3, of the Revised Statutes (R.S. 11:19-1 to 11:26-1). Similarly, the general grants of power to the Civil Service Commission are limited to investigations and hearings relative to alleged violations of the Civil Service Act and problems concerning veterans' tenure. See R.S. 11:1-7; R.S. 11:1-7.1; R.S. 11:5-1, as amended by L. 1944, c. 65, § 10; R.S. 11:15-1 et seq. Nowhere in the Civil Service Act can there be found any authority in the Commission to pass upon anything other than violations of the act and its own rules. The only question properly before the Commission was, therefore, whether or not the acting city manager had properly selected the persons appointed to the positions involved.
We pass to the remaining two grounds of appeal which directly affect the administration of the Civil Service Act and which are properly before us. Plaintiffs claim that the preferences granted veterans by the terms of N.J.S.A. 11:27-4 (R.S. 11:27-4, as amended by L. 1938, c. 381, § 3; L. 1946, c. 227, § 4, and L. 1952, c. 48, § 2), for appointments to civil service positions, apply to promotions such as are here involved. In its present form that section provides:
"The Civil Service Commission shall certify to the appointing authority the names and addresses of the three candidates willing to accept employment standing highest upon the register for each *375 position to be filled, and such appointing authority shall select one of the three so certified; provided, however, that whenever the name or names of a veteran or veterans shall be among those certified to the appointing authority the choice of the appointing authority shall be limited to the veteran or veterans whose name or names are included in such certification: whenever the names of two or more veterans shall be amongst those certified to the appointing authority, the appointing authority shall appoint the veteran whose standing is the highest on the register for the position to be filled."
We hold that N.J.S.A. 11:27-4 does not apply to promotions, and this because of the specific language in N.J.S.A. 11:27-6 (R.S. 11:27-6, as amended by L. 1938, c. 381, § 5), which reads:
"Nothing contained in sections 11:27-2 to 11:27-5 of this Title shall apply to promotions; provided, however, that whenever any examination for promotions be held and any veteran shall receive the highest certification from among those qualified, before such appointive power shall appoint for promotion any nonveteran, such appointive power shall show cause before the Civil Service Commission why such veteran should not receive such promotion."
Both sections stem from L. 1908, c. 156, § 21, which provided that when a position in the classified service is to be filled, the appointing authority shall notify the Civil Service Commission and the Commission shall certify to the authority a list of eligibles consisting of the three candidates standing highest upon the register for the position. L. 1920, c. 298, amended the Civil Service Act by providing for a system of point credits for veterans, and in particular amended section 21 of the 1908 act by adding a proviso that if one of the three individuals certified was a veteran, he was to be selected. No distinction was made in either the 1908 or 1920 law between original appointments and promotions.
L. 1932, c. 122, made rather extensive amendments to the Civil Service Act, including an amendment to section 21 which provided for absolute preference for disabled veterans in civil service appointments. Again no distinction was made between promotional or entrance-grade appointments. As to non-disabled veterans the preference was specifically limited *376 to entrance-grade appointments  the first mention of such appointments in the history of the legislation.
The Revision of 1937 expressly limited veterans' preferences of any kind to entrance-grade positions by the terms of R.S. 11:27-6 which provided that "Nothing contained in sections 11:27-2 to 11:27-5 of this title shall apply to promotions." In 1938 this section was amended by L. 1938, c. 381, § 5, to add the present proviso relating to veterans, the terms of which are stated above. The proviso has no application to the case at hand, since all of those certified were veterans.
Plaintiffs contend that L. 1946, c. 227, by implication repealed R.S. 11:27-6, as last amended in 1938. The 1946 act amended R.S. 11:27-1, 3, 4 and 5 in various respects, and repealed R.S. 11:27-2. However, it left R.S. 11:27-6 untouched. The argument plaintiffs advance for implied repealer is that because the 1946 Legislature amended various sections relating to veterans' preferences, it must have intended those preferences to apply to promotions as well as entrance-grade positions. However, they do not point to any language which would support their position. Nowhere in the 1946 act is there evidence of any intention on the part of the Legislature to repeal the specific and unequivocal limiting provision of N.J.S.A. 11:27-6. Nor is the language of R.S. 11:27-4, as amended, in any way inconsistent with that section of the Civil Service Act.
It is a well established principle of law in this State that repeals by implication are not favored. Goff v. Hunt, 6 N.J. 600, 606 (1951); Henninger v. Board of Chosen Freeholders of Bergen County, 3 N.J. 68, 71 (1949). See, also, State v. Hotel Bar Foods, Inc., 18 N.J. 115, 129 (1955). The court in the Goff case stated that it is only where the clear meaning of a statute is "plainly repugnant" to the former statutory provision and "designed to be a complete substitute" therefor, that an intention to repeal will be inferred. The Henninger court declared that, absent an express repealer, indication of a legislative intention to repeal a prior act must be "clear and compelling," and there is a *377 "strong presumption" against such an intention. In Whirl-O-Ball, Inc., v. City of Asbury Park, 136 N.J.L. 316, 319-320 (E. & A. 1947), the court said:
"* * * The court's power to determine that a later act repeals, by implication, a former act, rests upon the theory of legislative intent. * * * It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both, if possible. The intention of the legislature to repeal must be clear and manifest. * * * Where the repealing effect of the statute is doubtful, the statute is to be strictly construed to effectuate its consistent operation with previous legislation. * * *"
The language of N.J.S.A. 11:27-4 and that of N.J.S.A. 11:27-6 can be construed harmoniously so that a clear legislative pattern is discernable. The legislative intent which emerges is to set up a system of preferences for veterans as to entrance examinations only, but to require that if a veteran achieves the highest position on an eligibility list for a promotion he is not to be passed over in favor of a non-veteran without cause first being shown before the Civil Service Commission. This, as observed by the Commission in the course of its decision and opinion, is the construction which it has applied administratively; it described the argument of plaintiffs' counsel as being "in direct opposition to many administrative actions of the Department of Civil Service, taken since the enactment of the 1946 statute and based upon the view that section 11:27-6 is still in full force and effect." Such continued administrative construction is entitled to great weight. See State Department of Civil Service v. Clark, 15 N.J. 334, 340 (1954); Walsh v. Department of Civil Service, 32 N.J. Super. 39, 48 (App. Div. 1954).
Plaintiffs seek support for their position by adverting to the title of the 1946 act (L. 1946, c. 227), which reads, "An Act concerning employment, promotion and tenure of employees of the State and counties, municipalities and school districts where civil service is in effect * * *." They emphasize the use therein of the word "promotion." Although *378 the title of an act will be recognized as casting some light upon the meaning of legislation, Pancoast v. Director General of Railroads, 95 N.J.L. 428, 429, 430-431 (E. & A. 1921), it is not to be used to expand or enlarge upon the plain meaning of the language employed. 1 Sutherland, Statutory Construction (3d ed. 1943), § 1720, p. 314. The case of Addotta v. Blunt, 114 N.J.L. 85 (Sup. Ct. 1934), cited by plaintiffs, held only that the title of an act set a limitation upon the enacting clauses and that "any construction of the latter that would give them a scope beyond the object expressed in the title is for this reason to be rejected." (114 N.J.L., at pages 87-88) We are referred to no case which would support an attempt to construe a statute beyond its plain meaning because of the fact that the phrasing of its title was perhaps broader than the content of the statute itself. In disposing of this point we may note that the title of L. 1952, c. 48, further amending R.S. 11:27-4, made no mention of the word "promotion."
The final point urged by plaintiffs is that the appointments in question violated the provisions and spirit of the Civil Service Act as well as of the Municipal Manager Act. The argument here is that the acting city manager, as appointing authority, was charged with the statutory duty of making promotional appointments according to "merit and fitness," R.S. 11:21-3, and that the proofs established that the acting city manager was not acting as a free agent, but was taking orders from the city manager with whom he had discussed the appointments before he departed for his vacation. The evidence on this point was in some conflict. We are, however, of the clear opinion that there was sufficient before the Civil Service Commission to justify its conclusion that the final action taken by the acting city manager was the result of his own considered judgment.
Plaintiffs further contend that the acting city manager in allegedly accepting the recommendations of the city manager as to the men to be appointed sergeant, violated the prohibition against recommendations of applicants *379 for promotion to office set out in R.S. 11:22-13. There are two answers to this. In the first place, the statute permits a recommendation to the appointing authority if made by "the officer * * * under whose supervision or control the employee is serving." In this case plaintiffs, as patrolmen, had been serving under the supervision and control of the city manager, both by virtue of the provisions of R.S. 40:82-4(d) and those contained in Ordinance No. 2111 of Clifton, introduced in evidence, designating the city manager as the chief executive and administrative official of the city and giving him general supervision and control over all departments, including the department of public safety in which the police department was placed. The city manager was therefore within the class of those permitted to make recommendations. Secondly, assuming the statute had been violated, there is no evidence that the city manager's recommendation was made "with the knowledge and consent" of either of the appointees. In such case it is clear from the statute that the appointees may not be barred from holding their positions. But were it the case that they knew and consented to the recommendation, the statute would not necessarily bar them from promotion, for as we read it, its language is directory, not mandatory.
Affirmed.