210 N.J. Super. 315 (1986)
509 A.2d 808
CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ROOSEVELT STADIUM MARINA, INC., A CORPORATION OF THE STATE OF NEW JERSEY; ROOSEVELT MARINA, INC., A CORPORATION OF THE STATE OF NEW JERSEY; CAPTAIN'S TABLE, INC., A CORPORATION OF THE STATE OF NEW JERSEY; JACK JAFFE, IRVING FORMAN, ARTHUR WALTMAN, JR. AND CHARLES SAN FILIPPO, DEFENDANTS-RESPONDENTS, JANET AND VINCENT MOORE, PLAINTIFFS-INTERVENORS,
v.
KOLOMBARIS & PULOS, INC., DEFENDANT-INTERVENOR. K. HOVNANIAN COMPANIES OF NEW JERSEY, INC., APPELLANT-INTERVENOR.
Superior Court of New Jersey, Appellate Division.
Argued April 7, 1986.
Decided May 21, 1986.
*317 Before Judges FURMAN, PETRELLA and SKILLMAN.
Joanne Monahan argued the cause for appellant (Joseph Healy, Corporation Counsel; Joanne Monahan of counsel and on the brief).
Dennis A. Estis argued the cause for appellant-intervenor, K. Hovnanian Companies of New Jersey (Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein, attorneys; Dennis A. Estis and Sharon L. Levine on the brief).
*318 Lawrence A. Whipple, Jr. argued the cause for respondent Roosevelt Stadium Marina, Inc. (Whipple, Ross & Hirsh, attorneys; Lawrence A. Whipple, Jr. of counsel; Jonathan D. Clemente on the brief).
Seymour Margulies argued the cause for respondent Roosevelt Marina, Inc. (Margulies, Margulies & Wind, attorneys; Seymour Margulies of counsel, Robert E. Margulies and Judith Margulies Katz on the brief).
Janet and Vincent Moore, plaintiffs-intervenors, relied on brief filed on behalf of The City of Jersey City (Braverman & Lester, attorneys).
Kolombaris & Pulos, Inc., defendant-intervenor, relied on brief filed on behalf of Roosevelt Stadium Marina, Inc. (Joseph Rotolo, attorney).
PER CURIAM.
The City of Jersey City (Jersey City) appeals from a December 24, 1984 order denying its motion for relief from a July 29, 1977 "Final Order and Judgment" entered without consent or a trial. The order was allegedly entered as a result of a "settlement" which had never been approved by the governing body of Jersey City, and notwithstanding that: (1) the letter transmitting the order to the judge indicated that Jersey City had not consented to either the form or entry of the order; (2) an assistant corporation counsel of Jersey City had written a letter to the court and counsel indicating that the municipality had rejected the settlement; and (3) there had been no motion to enforce any alleged settlement. We reverse.
Jersey City had filed a complaint on February 13, 1975 against defendants Roosevelt Stadium Marina, Inc. (RSMI), Roosevelt Marina, Inc. (Marina), Captain's Table, Inc., Jack Jaffe and Irving Forman, as partners, Arthur Waltman, Jr. and Charles San Filippo. Jersey City sought recision of a 30-year lease between it and Jaffe based on various alleged breaches of the lease, including allegations of fraudulently depriving Jersey *319 City of rents to which it was entitled; failure to pay the cost of utilities; and conversion of utility services belonging to Jersey City. The lease covered 10 acres of unimproved waterfront property consisting of six acres of tidelands and four acres of upland located in the vicinity of what was then the Roosevelt Stadium parking lot. Jaffe had permission under the lease to operate a marina and construct a restaurant and administration building on the property. The constructed facilities were to revert to Jersey City when the lease expired on December 30, 1990.
Settlement negotiations regarding the lawsuit were undertaken between the parties. During the course of those negotiations, the prospect of a lease extension arose. Jersey City then filed a motion on November 29, 1976 to amend its complaint to request a declaratory judgment that an extension of the lease would not require public bidding, but could be accomplished through negotiations within the context of the litigation. Because of the length of time that had elapsed a court order was required before amending the complaint. See R. 4:9-1. We have found no record of any order disposing of the motion. Apparently it was never decided.
Settlement discussions took place over many months, and included conferences before a judge assigned for that purpose and presumably for eventual trial, if necessary. The record before us indicates that Jersey City's governing body had consistently declined or refused to approve any proposed settlement. The settlement issue was listed on the June 21, 1977 calendar for the regular meeting of the municipal council. The matter was considered at an open caucus meeting, but was deleted from the meeting agenda. It was apparently again considered on December 6, 1977 and tabled.[1] There had apparently *320 been a change in the membership of the governing body of Jersey City on July 1, 1977. What effect, if any, that had on the matter or the negotiations is unknown, and is immaterial. We are aware of the fact that on May 12, 1982 Jersey City authorized its planning board to prepare a blight study of the Roosevelt Stadium area. On November 24, 1982 the Municipal Council adopted a resolution approving the planning board's October 13, 1982 blight determination regarding the Roosevelt Stadium area. That action has no legal bearing on the issue of the validity of the July 29, 1977 "Final Order and Judgment."
The affidavits submitted in connection with Jersey City's June 1984 motion (originally returnable July 27, 1984) to vacate the July 29, 1977 order, display a difference of viewpoints among the attorneys for the respective sides as to whether it had been expressly stated, or understood, that municipal approval was required for any settlement. In any event, aside from the obvious proposition that a fact question may have existed as to what was said, and that a hearing might have been required on that basis, it would seem to be belaboring the obvious to observe that formal governmental action was required to approve a settlement. See discussion infra. Midtown Properties, Inc. v. Madison Tp., 68 N.J. Super. 197, 208 (Law Div. 1961), aff'd o.b. 78 N.J. Super. 471 (App.Div. 1963); City of Tulsa v. Oklahoma State Pen. & Retirement Bd., 674 P.2d 10 (Okla. 1983); 17 McQuillan, Municipal Corporations (3rd Ed.) §§ 49.33 and 49.38; and see also Note, "Apparent Authority of Agent of Municipality," 77 A.L.R.3d 925 (1977).
After various exchanges of letters with an assistant corporation counsel of Jersey City then assigned to the matter, the *321 attorney for RSMI ultimately circulated a proposed consent order, reciting that all parties consented, and providing space for written consent of the attorneys for the parties.[2] The proposed order that was circulated was defective and a second proposed consent order was circulated. Neither was consented to on behalf of Jersey City.
On July 18, 1977 RSMI's attorney wrote to the judge, who was holding settlement conferences, as follows:
Enclosed please find the original and four copies of a proposed Final Order and Judgment and an affidavit of mailing in connection with the above. Notwithstanding the fact that the plaintiff received a copy of this Order several months ago, no consent to the form and/or entry has been given by the plaintiff. Mr. Mackey, Assistant Corporation Counsel for the plaintiff, appears to have encountered some difficulty with certain members of the City Council in his efforts to have the Council ratify this settlement. All defense counsel have consented to the form and entry of this Order and Judgment.
Rather than delay this matter any further, this proposed Order and Judgment is submitted under the five-day Rule. If written objections are submitted by the plaintiff, I would respectfully request Your Honor to set this down for argument on July 29, 1977.
Thank you for your cooperation and attention. [Emphasis added.]
Thus, although the attorney for RSMI indicated that defense *322 counsel consented[3] to the order, it was clear that counsel for RSMI knew that Jersey City's attorney had not obtained municipal approval and had not consented in any fashion to the order.[4] In that regard the proposed order contained only the simple recital that: "it further appearing to the Court after having considered the pleadings, pre-trial memoranda of counsel and settlement negotiations that good cause exists for the entry of this Order and Judgment...." [Emphasis added].
On July 22, 1977 the then assigned assistant corporation counsel wrote to the judge, with a copy to RSMI's attorney, as follows:
This is to advise you that the City of Jersey City, the plaintiff in the above entitled litigation, objects to the proposed final order and judgment forwarded to you for signature by Lawrence A. Whipple, Jr. under letter dated July 18, 1977.
The Order attached to Mr. Whipple's letter was originally a settlement order which was to be consented to by all the parties. A condition of the plaintiff's counsel signing the consent settlement order was that it would be submitted to the City of Jersey City Municipal Council for approval by Resolution as to its form and substance, an approval which is obviously necessary before a matter may be settled by a Municipal Corporation, especially when, as in this case, the settlement involves an extension on a lease of municipally owned property. At its meeting of June 24, 1977, the Municipal Council rejected the settlement proposal and tabled it for further review. Since Council approval was not forthcoming, I, obviously, could not consent to the form and entry of the order in settlement of the City's claim against the various named defendants and, therefore, the order was not signed.
Since the Court cannot enter an order settling a City of Jersey City claim unless the terms of the settlement have been consented to by counsel and approved by *323 the Municipal Council, setting this matter down for argument on July 29, 1977 as suggested by Mr. Whipple in his July 18, 1977 letter, would be futile. Rather, it is suggested that the matter be scheduled for trial during September. If, before the trial date, the newly elected Municipal Council approves the settlement order, it will be signed and the matter disposed of without trial. However, if a hearing or discussion on the issues in the case is to be scheduled, it is respectfully requested that it be scheduled on a date after August 1, 1977 since I will be on a long scheduled vacation on July 29, 1977.
RSMI's attorney concededly received this objection letter. It is unclear whether the judge below received or read this letter prior to entering the order. In any event, inexplicably, without there having been a trial, a settlement, consent by Jersey City or even a motion to enforce a purported settlement, the judge signed the order on July 29, 1977. Thereafter, RSMI's attorney forwarded his client's check for $36,000, dated September 2, 1977, to Jersey City in compliance with one portion of the entered "Judgment." Jersey City's law department returned the check by an October 7, 1977 letter which stated:
Gentlemen:
Enclosed please find check of Roosevelt Stadium Marina, Inc. in the amount of $36,000 dated September 2, 1977 payable to the Division of Accounts and Control and signed by J. Jaffe and Irving Forman, which has been marked void.
The check is being returned to you because the proposed settlement in the case of City of Jersey City v. Roosevelt Stadium Marina, Inc., Roosevelt Marina, Inc., Captain's Table, Inc., Jack Jaffe, Irving Forman, Arthur Waltman, Jr. and Charles Sanfilippo, Docket No. L-21325-74, was rejected by the City of Jersey City Municipal Council and the attached check `in settlement of utilities and rents' therefore cannot be accepted.
A Motion to Vacate the `Consent Order' improperly signed by Judge Connors over my written objection will be made shortly. Obviously, a Judgment cannot be entered in this case without the consent of the plaintiff or a trial.
Jersey City did not file its motion to vacate the purported judgment until June 1984.[5] The motion was heard before the same judge who had entered the original order. In connection with the motion the parties submitted affidavits as to the intent of the other parties. The now second assistant corporation counsel's affidavit indicated that he had told the attorneys for *324 the defendants that any settlement required approval of the governing body and court approval of a lease extension without public bidding. He also asserted that he assumed that everyone knew what "was an apparent legal fact."
Jersey City argued before the trial judge, as it has in this court, that its governing body rejected the settlement; that the $36,000 check was returned and defendants knew that the settlement had been rejected; that the document entitled a "Final Order and Judgment" contained executory provisions which were never complied with by any party; and that defendants, particularly RSMI, were aware that the legality of the order was in doubt and acted with that in mind. Hence, Jersey City asserts that there could have been no real prejudice to any party in any event, and that even subsequent negotiations which took place between RSMI and Marina were held with their awareness of the questionable nature of the July 29, 1977 order. Moreover, as evident from the face of that order, only the existence of "settlement negotiations" had been recited. No party has presented us with any transcript of any purported settlement or argued that such a transcript existed.
After hearing oral arguments spread out over three dates in 1984, the judge denied relief from the 1977 order. From his comments on the record, the judge appeared to be under the mistaken assumption that there had to be proof that Jersey City rejected the alleged settlement or that there was a resolution to that effect. Just the opposite is the case under the law. Leonia v. Fort Lee, 56 N.J. Super. 135, 144 (App.Div. 1959). See also Midtown Properties, Inc. v. Madison Tp., supra (68 N.J. Super. at 208). In denying Jersey City's application, the judge said among other things:
I find that the City through their servants, agents, and employees did not sustain the necessary proofs for me to set aside a judgment that was entered into by way of settlement and memorialized by way of an order of July the 29th, 1977.
I did every single thing possible in my own mind to look into and to find out why the City ... sat on this judgment.... Mr. Mackey said in his letter of October the 7th, 1977 that he was going to move to vacate the judgment. He *325 did not. I find that was a deliberate act on the part of Mr. Mackey. And his act is the City's act. He was employed as an attorney. He was an Assistant Corporation Counsel. And his acts are binding upon the City * * * I find that the City of Jersey City knew what they were doing. I find that they cannot come in seven years and four months later to set aside a judgment that they knew and admit knowing by Mr. Mackey's supplemental investigation and affidavit. * * * I further find that the City is no special category. That they are like any other client that comes into court. That they have no special standing.

I
On this appeal Jersey City argues that the final order and judgment should be vacated because it confers valuable rights on defendants for nominal consideration in violation of the New Jersey Constitution of 1947 (see Article VIII, § 3, paras. 2 and 3); and that the order is in violation of the Local Lands and Buildings Law, N.J.S.A. 40A:12-1, et seq. Jersey City also argues that the order is against public policy; that it should be set aside pursuant to R. 4:50-1(f); that the order is utterly void and may be set aside at any time, R. 4:50-1(d); and that the equitable defenses of estoppel and laches may not be invoked against it. It further argues that the order was entered under the mistaken belief that there was consent, and thus may be set aside as a clerical error under R. 1:13-1. Appellant-intervenor K. Hovnanian Companies of New Jersey, Inc. (Hovnanian)[6] argues that the order should be set aside because it was entered as a fraud upon the court, see R. 4:50-1(c); that it was entered due to inexcusable neglect of an assistant corporation counsel; that it was error to dismiss the law suit without a hearing or consent; and that in any event the order must be set aside because the assistant corporation counsel did not have authority to stipulate to a settlement or dismissal.
Defendants essentially argue that there is no basis to set aside the judgment under either R. 4:50-1(d) or (f); that there *326 was neither fraud nor clerical mistake; and that estoppel, laches or waiver should bar Jersey City. Jersey City and Hovnanian reply that respondents are barred from asserting equitable defenses because of the doctrine of unclean hands.
There is no doubt that generally the desirable principle is finality to litigation.[7]Hodgson v. Applegate, 31 N.J. 29, 43 (1959). Moreover, there is a public policy to uphold settlements which have been duly accepted by all the parties. Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 35 (1957); Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App.Div. 1974), Dodd v. Copeland, 99 N.J. Super. 481, 485 (App.Div. 1968), aff'd o.b. 52 N.J. 537 (1968). There are, however, occasions which necessitate a judgment or order being vacated, even where there has been no appeal. Applications to the trial court for relief from judgments or orders under R. 4:50-1 are generally within the sound discretion of the trial judge. See Garza v. Paone, 44 N.J. Super. 553, 558 (App.Div. 1957). Under R. 4:50-2, motions for relief from a judgment or order brought under R. 4:50-1(d) or (f) are to be made within a reasonable time, see United Pacific Ins. Co. v. Lamanna's Estate, 181 N.J. Super. 149, 166-168 (Law Div. 1981), while applications under R. 4:50-1(a) on the grounds of "mistake, inadvertence, surprise, or excusable neglect" are limited to "not more than one year after the judgment, order or proceeding was entered or taken."
In the case before us, the record provides no support whatever for respondents' position that an alleged settlement, supposedly incorporated into the 1977 judgment, but not referred to therein, was consented to by Jersey City. Not only do the documents and correspondence not reflect that fact, but to the *327 contrary they reflect that all negotiations were "without prejudice" and only that settlement negotiations had taken place. The letter transmitting the proposed form of order to the court indicated that there was no consent because there was no settlement, and the order recited only "settlement negotiations." Moreover, unless an attorney is specifically authorized by the client to settle a case, the consent of the client is necessary. Stout v. Stout, 155 N.J. Super. 196, 203-204 (App. Div. 1977), superseded on other grounds, Petersen v. Petersen, 85 N.J. 638 (1981); Clarkson v. Selected Risks Ins. Co., 170 N.J. Super. 373, 379 (Law Div. 1979). See also, Midtown Properties, Inc. v. Madison Tp., supra, 60 N.J. Super. at 208; and 17 McQuillan, supra § 49.38. See also R.P.C. 1.4.
In addition, here, a municipal government was involved. It is elementary that municipalities can ordinarily act only by adoption of an ordinance or resolution at a public meeting. See, e.g., Fraser v. Township of Teaneck, 1 N.J. 503, 507 (1949); Tumulty v. Jersey City, 57 N.J. Super. 503, 514 (App.Div. 1959); DeMuro v. Martini, 137 N.J.L. 640 (Sup.Ct. 1948), aff'd 1 N.J. 516 (1949). Governmental bodies must act by formal action not only with respect to contracts, Monmouth County Pub. Co. v. Monmouth County, 17 N.J. Misc. 147, 6 A.2d 487 (Sup.Ct. 1939), aff'd 124 N.J.L. 105 (E. & A. 1940), but also as to giving consent to the settlement of litigation. DeMuro v. Martini, 1 N.J. 516, 521 (1949). See 17 McQuillan, supra, §§ 48.18 and 49.33. The unauthorized consent of a municipal attorney cannot bind the governing body. Stonehurst at Freehold v. Tp. Comm, Tp. of Freehold, 139 N.J. Super. 311, 314 (Law Div. 1976); Leonia v. Fort Lee, supra, 56 N.J. at 144. See also Midtown Properties, Inc. v. Madison Tp., supra, 68 N.J. Super. at 208; 17 McQuillan, supra, §§ 49.33 and 49.38.

II
Moreover, even if Jersey City's assistant corporation counsel had represented that he was authorized on behalf of *328 Jersey City to settle the litigation (and aside from the fact that prudence would have dictated that respondents obtain written authorization), the settlement here would have clearly violated the Local Lands and Buildings Law, i.e., N.J.S.A. 40A:12-14, which had become effective July 1, 1971 and was in effect in 1977. That statute sets forth the required procedures that a municipality must follow where it seeks to lease real property. Cf., Anschelewitz v. Belmar, 2 N.J. 178, 183 (1949); Edelstein v. Asbury Park, 51 N.J. Super. 368, 388-389 (App.Div. 1958); and 17 McQuillan, supra § 49.38. N.J.S.A. 40A:12-14(a), as in effect in 1977 stated:[8]
(a) In the case of a lease to any private person, said lease shall be made by public letting to the highest bidder after advertisement thereof in a newspaper circulating in the municipality or municipalities in which the leasehold is situated by two insertions at least once a week during 2 consecutive weeks; the lease publication to be not earlier than 7 days prior to the letting of the lease. The governing body may, by resolution, fix a minimum rental with the reservation of the right to reject all bids where the highest bid is not accepted. Notice of such reservation shall be included in the advertisement of the letting of the lease and public notice thereof shall be given of the time of the letting of the lease. Such resolution may provide that upon the completion of the bidding, the highest bid may be accepted or all of the bids may be rejected. It shall also set out the conditions, restrictions and limitations upon the tenancy subject to the lease. Acceptance or rejection of the bid or bids shall be made not later than at the second regular meeting of the governing body following the opening of the bids, and, if the governing body shall not so accept such highest bid, or reject all bids, said bids shall be deemed to have been rejected. Any such award may be adjourned at the time advertised for not more than 1 week without readvertising.
We construe this statute to apply equally to extensions of leases or new leases. Failure to comply with the statutory scheme thus renders any purported lease extension illegal and void. See Hoboken Local No. 2, N.J. State Patrolmen's Benevolent Ass'n v. Hoboken, 23 N.J. Misc. 334, 340-341, 44 A.2d 329 (Sup.Ct. 1945), aff'd o.b. 134 N.J.L. 616 (E. & A. 1946). *329 There was no claim made by any party of any preexisting entitlement to an extension of the lease, such as by option. Thus, any purported settlement was beyond the authority of the municipality with respect to leases and extensions of leases in any event. See Midtown Properties, Inc. v. Madison Tp., supra, 68 N.J. Super. at 207; Edelstein v. Asbury Park, supra, 51 N.J. Super. at 389.
Assuming, arguendo, that there had been a settlement without formal governmental approval, the incorporation of a settlement that was illegal into a consent judgment does not give validity to either a lease, or as here a 15-year extension of a lease. Midtown Properties, Inc. v. Madison Tp., supra (68 N.J. Super. at 206). As stated in Midtown Properties:
A municipality in exercising the power delegated to it must act within such delegated power and cannot go beyond it. Where the statute sets forth the procedure to be followed, no governing body, or subdivision thereof, has the power to adopt any other method of procedure. [Id. at 207.]
An agreement settling a law suit may be considered a contract, absent fraud, duress or other considerations, Pascarella v. Bruck, 190 N.J. Super. 118, 124-125 (App.Div. 1983), certif. den. 94 N.J. 600 (1983); Public Service Electric & Gas Co. v. Waldroup, 38 N.J. Super. 419 (App.Div. 1955). However, any purported contract for a lease extension here would have been ineffective. Neither its incorporation in a court order nor the passage of time can change that fact. A void judgment may be set aside at any time, unless equitable considerations warrant a different result. See Midtown Properties Inc. v. Madison Township, supra, 68 N.J. Super. at 207; Gloucester City Trust Co. v. Goodfellow, 121 N.J.L. 546, 548 (E. & A. 1939). See 60 C.J.S., Motions and Orders, § 65, at pages 111-114 (1969).

III
Aside from respondents' unclean hands, equitable defenses such as estoppel and laches do not apply to contracts which are ultra vires and void. Johnson v. Hospital Service *330 Plan of N.J., 25 N.J. 134, 140 (1957); Midtown Properties Inc. v. Madison Township, supra, 68 N.J. Super. at 208. Cafe Gallery, Inc. v. Alcoholic Beverage Control Div., 186 N.J. Super. 189, 196 (Law Div. 1982), citing Summer Cottagers Ass'n v. Cape May, 19 N.J. 493, 504 (1955). Since the lease extension would be void or ultra vires due to failure to comply with the statute, estoppel, waiver and laches are not available as defenses to respondents.
Respondents cannot claim to have been misled. They had been informed in 1977 that Jersey City took the position that there was no settlement and that the order had been improperly entered. There could have been no reasonable or justifiable reliance on any inaction of one of Jersey City's assistant corporation counsel. Furthermore, laches would not apply because this is not a case where a stale claim is being asserted. Gladden v. Board of Trustees of the Public Employees' Retirement System, 171 N.J. Super. 363, 370-371 (App.Div. 1979). Nor was there a waiver. Jersey City had put defendants on notice that it did not consider the 1977 order valid or binding. There was no intentional relinquishment of a known right. West Jersey Title Co. v. Industrial Trust Co., 27 N.J. 144, 152 (1958); George F. Malcolm, Inc. v. Burlington City Loan & Trust Co., 115 N.J. Eq. 227, 232 (Ch. 1934). The failure of Jersey City to have moved promptly to vacate the void order does not constitute the type of act required to establish a knowing waiver, and cannot give validity to a void order.
In addition, regardless of the merits of the underlying litigation instituted by Jersey City and any potential difficulty in establishing liability of the defendants to Jersey City or in proving damages, defendants have unclean hands because RSMI's attorney submitted a proposed form of final order under the five-day rule (R. 4:42-1(b)) to a judge when it was clear that there had been no viable settlement and no determination by a court. Because the attorney's letter transmitting *331 the order to the judge stated that Jersey City's assistant corporation counsel was having problems with getting approval from the City Council, and the recital in the order of only "settlement negotiations," the order should not have been submitted at all, let alone under the five-day rule. There had not even been a determination that there had been an enforceable settlement. There was no basis for the entry of the order. Use of the five-day rule is predicated on a situation where there has been a court determination and to obviate the necessity of consent to the form of an order appropriately declared by the court. See Elliott v. Elliott, 97 N.J. Super. 10, 12 (Ch.Div. 1967). The rule was never intended to allow court orders without judicial determinations following court proceedings complying with due process; nor was it intended to apply in other than default situations or cases where authorized consent was not endorsed on the order. See R. 4:42-1(a) and R. 4:42-1(b) and comments thereto in Pressler, Current Court Rules, ("The clear intent of the rule is that in the absence of objection the court should sign the proposed order or judgment if it finds the terms thereof to constitute an accurate statement of its disposition.") Here, the purported order or judgment was hardly authorized as a settlement and was not a disposition that could be made with respect to the lease extension.
Moreover, the parties here were dealing with a governmental body, and they are charged with knowledge of the law and the necessity for official public action. See footnote 4, supra. Thus, even assuming that there had been a settlement which had not been approved by the governing body, the settlement and order could be set aside at any time. See R. 4:50-1(d).
On the other hand, if, as it appears from the record before us, Jersey City did not agree to a settlement, then it is clearly entitled to relief from the purported order not only under R. 4:50-1(d), but also under (f), despite the passage of time involved here. Subsection (f) of the rule is limited to exceptional circumstances and those involving compelling equities. Baumann *332 v. Marinaro, 95 N.J. 380, 395-398 (1984); Doyle v. Chase Manhattan Bank, 80 N.J. Super. 105, 125 (App.Div. 1963), certif. den. 40 N.J. 508 (1963); In re Estate of Wehrhane, 149 N.J. Super. 41, 54 (Ch.Div. 1977). We view the situation here as such an exceptional circumstance. The July 29, 1977 order was a nullity. Here, unless relief was granted, Jersey City and its taxpayers would appear to be bound to a contract which not only had not been agreed to, but which could not have been agreed to without following the appropriate statutory procedures.
Submission of an order where there had been no approval by the municipal council, and no decision of a court after a plenary hearing, was questionable. Every attorney has an obligation of full candor with the court. In re Nigohosian, 88 N.J. 308, 314 (1982); In re Turner, 83 N.J. 536, 539 (1980). It seems to us that RMSI's attorney had more of an obligation than just submitting an order with the statement that Jersey City's attorney was having difficulty with his governmental client, but that all defendants consented. As noted in Turner:
A lawyer has an obligation of being candid and fair with the court. As an officer of the court, his duty can be no less. In People v. Beattie, 137 Ill. 553, 574, 27 N.E. 1096, 1103 (Sup.Ct. 1891), the Court, commenting on this duty, wrote:
The lawyer's duty is of a double character. He owes to his client the duty of fidelity, but he also owes the duty of good faith and honorable dealing to the judicial tribunals before whom he practices his profession. He is an officer of the court  a minister in the temple of justice. His high vocation is to correctly inform the court upon the law and the facts of the case, and to aid it in doing justice and arriving at correct conclusions. [83 N.J. at 539].
In light of our determination we need not decide whether there should be a factual hearing before another judge as to whether the order could be considered to have been entered as a clerical error. See State v. Conners, 129 N.J. Super. 476, 484 (App.Div. 1974). Likewise, we need not decide whether the lease extension would be violative of N.J. Const. (1947), Art. VIII, § 3, ¶ 2 which provides that: "No ... city ... shall hereafter give *333 any money or property ... to or in aid of any individual, association or corporation...."[9]
The decision of the judge refusing to vacate the July 29, 1977 order is reversed and the matter is remanded to the trial court with direction to vacate same.[10]
NOTES
[1] There was a problem with availability of certain of Jersey City's records because there had been a fire in 1979 in the City Hall building which resulted in some loss of files either by fire or water damage or both. In any event, that fact has no real significance regarding the legal issues and no party has produced any contrary documentation. The next time this item appeared on the agenda of the Jersey City governing body was April 3, 1979 when the matter was removed from the table and defeated. Although the resolution has not been found, apparently these meetings were open meetings and may even have been reported in the press. We are unaware of whether any newspaper articles relating to discussion of the proposed lease extension and settlement of the litigation were published.
[2] We note that even the initial letters between RSMI's attorneys and the assistant corporation counsel indicated that all the statements of the proposed terms of settlement were "without prejudice." Moreover, RSMI's attorney in a February 11, 1977 letter to the involved assistant corporation counsel expressly stated: "This offer is contingent upon the City's obtaining court-approval of the legality of the 15 year extension." The extension of the lease was requested by defendants in the negotiations and was not part of any of the initial pleadings. As noted, Jersey City moved to amend its complaint for a declaration with respect to the lease extension, but apparently that motion was never decided. Obviously defendants had no right to such a lease extension. See section II, infra. The original complaint and the pleadings actually filed as such did not contemplate any party demanding such relief even if a purported reservation of rights by some defendants to assert future cross-claims and counterclaims had any effect. Such a reservation did not supplant the requirement that court approval for untimely amendments to pleadings be obtained. See R. 4:9-1.
[3] No recital of consent was contained in the order which was submitted to the judge under the five-day rule, and no written consents by defendants appeared on the form of order.
[4] This is without regard to whether experienced counsel knew or should have known that formal approval of a governing body is required. Hoboken Local No. 2, N.J. State Patrolmen's Benevolent Ass'n v. Hoboken, 23 N.J. Misc. 334, 340-341, 44 A.2d 329 (Sup.Ct. 1945), aff'd o.b. 134 N.J.L. 616 (E. & A. 1946); New Jersey & N.E. Tel. Co. v. Jersey City, 34 N.J. Eq. 580 (E. & A. 1881). See 10 McQuillan, supra § 29.04. The then effective Jersey City Municipal Code, Section 2-64, expressly provided that settlement of litigation requires the "advice and consent of the Council."
[5] The appendix submitted by Jersey City fails to include the filing date at the top of the first page of each filed document as required by R. 2:6-1(b).
[6] A potential developer of the property under the blight resolution.
[7] We have recently noted that "where the issue is purely one of law and equitable considerations warrant a new determination, the doctrine of res judicata will not be permitted to bar reconsideration despite a previous adjudication." Forgash v. Lower Camden County School, 208 N.J. Super. 461, 466 (App.Div. 1985), citing Plainfield v. Public Service Elec. and Gas Co., 82 N.J. 245, 258-259 (1980).
[8] This section was amended by L. 1983, c. 335, § 11, effective September 2, 1983; L. 1983, c. 440, § 1, effective January 9, 1984; and L. 1984, c. 27, § 1, effective April 11, 1984. None of these amendments affect the disposition of this appeal.
[9] We also need not determine the effect of a conveyance, lease or extension of a lease of property for less than fair market value of the property. See Rockaway Borough v. Rockden American Logion Post No. 175, 39 N.J. 504 (1963); Wilentz v. Hendrickson, 133 N.J. Eq. 447 (Ch. 1943), aff'd 135 N.J. Eq. 244 (E. & A. 1944); Hoglund v. Summit, 28 N.J. 540 (1959). Cf. Hill v. Summit, 64 N.J. Super. 522 (Law Div. 1960).

See also N.J.Const. (1947), Art. VIII, § 3, ¶ 3 which states:
No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever.
[10] We do not rule on whether the action may proceed notwithstanding the lapse of time that has occurred. At oral argument it was represented that a voluntary dismissal was contemplated in the event of a reversal. If any party intends to proceed, we leave it to the trial court to determine the effect, if any, of the passage of time upon the right of the parties to proceed.