284 N.J. Super. 277 (1995)
664 A.2d 1284
ANTHONY M. SELLITTO, JR., PLAINTIFF-APPELLANT,
v.
BOROUGH OF SPRING LAKE HEIGHTS, THE MAYOR AND COUNCIL OF THE BOROUGH OF SPRING LAKE HEIGHTS, ALBERT P. RATZ, JR., CONSTRUCTION OFFICIAL OF THE BOROUGH OF SPRING LAKE HEIGHTS, SMSA LIMITED PARTNERSHIP, A NEW YORK LIMITED PARTNERSHIP, AND BELL ATLANTIC MOBILE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 12, 1995.
Decided July 10, 1995.
*279 Before Judges VILLANUEVA and BRAITHWAITE.
Anthony M. Sellitto, Jr., pro se, argued the cause for appellant (Aballo & Sellitto, attorneys; Mr. Sellitto, on the brief).
Robert R. Blasi argued the cause for respondents Borough, Mayor and Council, and Construction Official of Borough of Spring Lake Heights (Mr. Blasi, on the letter brief).
Richard D. Stanzione argued the cause for respondents SMSA and Bell Atlantic Mobile (Hiering, Dupignac & Stanzione, attorneys; *280 Mr. Stanzione, of counsel; Mr. Stanzione and Sean E. Regan, on the brief).
Pringle & Quinn, attorneys for the Planning Board of Spring Lake Heights (Joseph P. Quinn, on the letter brief).
The Opinion of the Court was delivered by VILLANUEVA, J.A.D.
Plaintiff appeals, pursuant to leave granted, from the denial of his request for injunctive relief to restrain defendant, Borough of Spring Lake Heights (borough), from leasing certain of its municipal property to defendants SMSA Limited Partnership and Bell Atlantic Mobile for their use as a cellular telephone communications facility. The property in question was already being used by the borough as a water tower. Bell proposed to construct antenna panels on the existing tower and build an accompanying equipment storage shed nearby. We reverse.
As of all relevant dates, the borough was the owner of Lot 18, Block 24. Plaintiff was the owner of Lot 21.02, Block 24, which was adjacent to the borough's property, both of which are in the borough's R-3 residential zone. Permitted principal uses in this zone included "essential services" (§ 22-606.1 of the borough's zoning code, revised 8/89).

Essential services shall mean the erection, construction, alteration or maintenance by a public utility or municipal agency, of underground or overhead transmission, distribution or collection systems necessary for the furnishing of adequate service by such utility or agency to the use on the same lot or surrounding neighborhood, or for the public health, safety or general welfare.
[§ 22-302 of the borough's zoning code, revised 8/89.]
On November 22, 1993, the borough by resolution # 104-1993 authorized the mayor to enter into a certain option and lease agreement with Bell Atlantic[1] with respect to this property, which was executed on December 27, 1993.
*281 According to this agreement, the borough granted an option to Bell Atlantic to lease space on an existing water tower situated on the borough's property
for the purpose of installing, maintaining and operating an antenna array and associated transmission lines and mounting apparatus, and to lease a portion of said real property consisting of approximately 800 square feet for the purpose of constructing, maintaining and operating a mobile communications facility, consisting of an equipment building of approximately 312 square feet to be constructed by [Bell Atlantic] on the premises at the base of the Tower, with a right of way for access thereto, the right to install and maintain wires, cables and necessary connections between the equipment [Bell Atlantic] will install in the equipment building and the antenna array of up to twelve (12) antennas, ...
For consideration of $500, Bell Atlantic obtained the right to exercise its option up until May 31, 1994. On February 7, 1994, the option was exercised by formal notice to become effective March 1, 1994. The lease was for a five-year term, with options to extend for three additional five-year terms and one-year terms thereafter, and the annual rental for the first five years was to be $24,300. The lease was contingent upon Bell Atlantic's ability to use the premises as contemplated by obtaining all certificates, permits, licenses and other approvals that may be required by any federal, state or local authority. The lease was not submitted for public bidding because it was the legal opinion of Robert R. Blasi, attorney for the borough, that this was not required by law.
Bell Atlantic held a radio common carrier operating license issued by the Federal Communications Commission, and was one of only two such licensees in the region who was authorized to provide such services. According to the certification of Blasi, Bell Atlantic had first approached the borough in the summer of 1993 regarding its plan to erect a communications facility. The borough's police chief conducted an exhaustive investigation of such facilities and worked with Bell Atlantic to locate a site that would have little or no impact on the surrounding area. The site selected was the site of the borough's elevated water tank, two additional storage tanks and main pump station.
Plaintiff attacked the proposed use on two grounds. First, he claimed that the lease was null and void because it failed to comply *282 with the competitive bidding requirements of the Local Lands and Buildings Law, N.J.S.A. 40A:12-1 to 12-30 (the LLBL), and second, that the borough failed to adhere to its own zoning ordinances by allowing a nonpermitted use to be constructed in this residential zone and by not requiring a variance and site plan approval for the project.
On April 29, 1994, plaintiff filed a verified complaint for declaratory judgment with restraints in the Superior Court of New Jersey against the following defendants: the Borough of Spring Lake Heights, the Mayor and Council of the borough, Albert P. Ratz, Jr. (the construction official of the borough) and Bell Atlantic. This action will be referred to as the "borough litigation." Plaintiff sought an order declaring Bell Atlantic's lease of the borough's property to be null and void, requiring the borough to submit the lease to competitive bidding, requiring Bell Atlantic to obtain variance and site plan approval for its proposed use of the property and restraining the borough's construction official from issuing any building permits to SMSA/Bell Atlantic.
Plaintiff, admittedly, did not file his complaint in lieu of prerogative writs within forty-five days after: (1) the option/lease agreement was executed on December 27, 1993; (2) the option was invoked on February 7, 1994; and (3) the lease became effective on March 1, 1994. See R. 4:69-6(a). The judge nevertheless agreed to enlarge the time for filing such an action, based upon R. 4:69-6(c), which permits a court to enlarge the period of time "where it is manifest that the interest of justice so requires." Because plaintiff alleged that he did not become aware of the actions taken by the borough until two days prior to April 29, 1994, the judge found that the interest of justice would not be served by rigid application of the forty-five day period. Although defendants challenged the timeliness of plaintiff's action in the trial court, they have not reasserted that challenge on appeal.
On April 29, 1994, plaintiff obtained an order to show cause and a temporary restraining order which restrained defendants from further performing any construction work on the subject property *283 and which ordered defendants to show cause why plaintiff should not be granted the relief requested. After hearing oral argument on the return date, the court entered an order dated May 18, 1994, allowing plaintiff to file an amended complaint to correct the name of defendant Bell Atlantic[2] to "Bell Atlantic Mobile Communications, Inc.," and to convert the action into one in lieu of prerogative writs. On May 24, 1994, the court issued a written opinion and order which denied plaintiff's request for injunctive relief and dissolved the temporary restraints.
Relying on one particular provision of the LLBL, N.J.S.A. 40A:12-24, the court held that public bidding was not required. It also held that a cellular communications facility is an "essential service" within the meaning of the borough's zoning ordinance; thus, it was a permitted use within the residential zone and it required only minor site plan approval, which had been sought by Bell Atlantic.
Three days later, plaintiff filed a separate verified complaint in lieu of prerogative writs with restraints, this time against defendants Planning Board of the Borough of Spring Lake Heights (the planning board), and Bell Atlantic Mobile Communications, Inc. (Bell Atlantic). This action will be referred to as the "planning board litigation." In this complaint, plaintiff asserted that the issue of whether conditional use approval was required for the proposed use of the property was still pending before another judge in the related action, the "borough litigation."[3] Plaintiff sought an order directing the planning board to require conditional use approval for the site plan application of Bell Atlantic.
On June 1, 1994, the court denied plaintiff's request for temporary restraints but ordered defendants to show cause on June 10, 1994, why plaintiff's requested relief should not be granted. With *284 respect to the issue of the borough's compliance with its own zoning requirements, the judge agreed with plaintiff that, where a municipality is acting as a private agency, it must abide by zoning regulations. Nevertheless, because the judge concluded that this communications facility met the definition of an "essential service," he found it to be a permitted use within the R-3 zone. In so concluding, the judge analogized this use to a public utility and stated that it would be backward to take a narrow view of the meaning of a public utility, especially in light of the communications explosion that has recently taken place and will continue to take place. The court also noted that this proposed use met the definition of a minor site plan, and that Bell Atlantic had recently applied for such approval.
On June 7, 1994, this court denied plaintiff's applications for reinstatement of the restraining order and for leave to appeal in the "planning board litigation." On the same date, this court granted plaintiff's motion for leave to appeal in the "borough litigation," limiting the issues on appeal to "the invalidity of the lease because of failure to require public bidding and because of the failure of the Mayor & Council to consider the detrimental effect of the use on neighboring property and its occupiers."

I.
Plaintiff contends that the trial court erred in holding that the lease was not subject to the public bidding requirements of N.J.S.A. 40A:12-14 and in holding, instead, that N.J.S.A. 40A:12-24 permitted the lease to be executed without any such bidding. We agree. However, this is a troublesome issue because of the apparent inconsistencies between these two provisions.
The judge noted that it was curious that plaintiff was making this argument because plaintiff's real objection to the lease was the proposed use of the property, not the particular entity using it. However, the judge felt that, because there was only one other potential licensed user, there was no real chance of any competitive bidding. As such, by forcing the borough to place the lease *285 out for bids, plaintiff would not accomplish his true purpose, which was to have the borough consider other uses for this property or other locations for this use.
The judge nevertheless went on to consider the merits of plaintiff's argument. In essence, the judge recognized that there were two statutory provisions which were arguably controlling, both of which were contained within the LLBL and which were enacted on the same day as the original legislation, July 1, 1971.
The first of these provisions, N.J.S.A. 40A:12-14, was deemed by the Legislature to be a new provision, effective July 1, 1971, because it did not have its source in any prior statute. It was arguably the first statute to mandate that a municipality which proposes to lease its property to a private person may do so only after advertising for public bids. The statute in pertinent part provides:
Any county or municipality may lease any real property, capital improvement or personal property not needed for public use as set forth in the resolution or ordinance authorizing the lease, other than county or municipal real property otherwise dedicated or restricted pursuant to law, and except as otherwise provided by law, all such leases shall be made in the manner provided by this section.
(a) In the case of a lease to a private person, except for a lease to a private person for a public purpose as provided in ... (C. 40A:12-15)[[4]], said lease shall be made to the highest bidder by open public bidding at auction or by submission of sealed bids.
* * * * * * * *
[N.J.S.A. 40A:12-14(a).]
The other provision at issue is one that had its origins in R.S. 40:60-42, which in turn had its origins in the Home Rule Act of 1917. According to N.J.S.A. 40A:12-24:
Every county or municipality may lease for fixed and upon prescribed terms and for private purposes any of the land or buildings or any part thereof not presently needed for public use to the person who will pay the highest rent therefor. The use by the lessee shall be of such character as not to be detrimental to the building or the use of the building or the use of the unleased part of the building.
[emphasis added.]
*286 Both in the trial court and on appeal, the parties have approached the issue in terms of whether this latter statute, N.J.S.A. 40A:12-24 (§ 24), requires public bidding. That is, plaintiff argues that the only way for a municipality to find the person who will pay the highest rent for the property is to solicit public bids. Defendants argue that the Legislature must have intended to dispense with the public bidding requirement in this section of the statute because, if it had intended otherwise, it would have included the express language found in N.J.S.A. 40A:12-14 (§ 14). Again on appeal, the parties have focused on the interpretation to be given the phrase "to the person who will pay the highest rent therefor" contained in § 24.
However, this begs the real question, which is whether § 14 or § 24 applies here. Defendants have not satisfactorily explained why § 14, which they concede does require public bidding, does not apply to this transaction. Nor did the trial judge satisfactorily explain his choice; rather, after referring to both statutes, the judge merely concluded that they "approach the issue with differing language and with a different intent."
We agree with the trial judge that § 24 does not by its terms require public bidding. Nevertheless, reliance on this section is misplaced. There is no reason why § 14 should not have been invoked here. Both the legislative intent of the LLBL and the judicial gloss which has been put on that legislative enactment support the conclusion that § 14 applied here. In addition, there was no competent proof before the trial court that Bell Atlantic was "the person who will pay the highest rent therefor."
This does not shed any light on why the Legislature, on the same day and within the same bill: (1) enacted a new provision (§ 14) which set forth in considerable detail the procedures which had to be followed by a municipality when it leased its public lands for a private purpose; and (2) retained an older source provision (§ 24) which merely required the municipality to find the person *287 willing to pay the highest rent for land or buildings not presently needed for public use before leasing the property. This is not a question, then, of the more general statute yielding to the more specific; nor is it a question of the older statute yielding to the more recent. Given that the two provisions were enacted simultaneously and that they used almost identical introductory language, it is curious how they wound up in the same enactment. Significant, however, is the fact that § 24, which does not require bidding, is found in a subheading to the LLBL entitled "OTHER MATTERS."
Our answer is found in the case law interpreting both the LLBL and the Local Public Contracts Law, N.J.S.A. 40A:11-1 to 11-49, also enacted on July 1, 1971. That is, our courts have consistently held that the public bidding statutes are for the benefit of the taxpayers and are to be construed as nearly as possible with sole reference to the public good. Terminal Construction Corp. v. Atlantic County Sewerage Authority, 67 N.J. 403, 409-10, 341 A.2d 327 (1975); Miller v. Passaic Valley Water Com'n, 259 N.J. Super. 1, 12, 611 A.2d 128 (App.Div.), certif. denied, 130 N.J. 601, 617 A.2d 1222 (1992). Their objectives are to guard against favoritism, improvidence, extravagance and corruption, and their aim is to secure for the public the benefits of unfettered competition. L. Pucillo & Sons, Inc. v. Mayor & Council of Borough of New Milford, 73 N.J. 349, 356, 375 A.2d 602 (1977) (citing Terminal Constr. Corp. v. Atlantic County, supra, 67 N.J. at 410, 341 A.2d 327); Miller v. Passaic Valley Water Com'n, supra, 259 N.J. Super. at 12, 611 A.2d 128. See also Jersey City v. Roosevelt Stadium Marina, Inc., 210 N.J. Super. 315, 509 A.2d 808 (App.Div. 1986).
The purpose of competitive bidding is to obtain the best economic result for the public entity and ultimately for the taxpayer. Wasserman's Inc. v. Middletown, 137 N.J. 238, 246, 645 A.2d 100 (1994). In Disposmatic Corp. v. Mayor & Council of Kearny, 162 N.J. Super. 489, 393 A.2d 610 (Ch.Div. 1978), Judge Kentz held that the leasing of municipally-owned property is governed by *288 N.J.S.A. 40A:12-14 "except as otherwise provided by law" and that a plaintiff challenging the procedure followed by a municipality need not prove actual corruption or manipulation of the process to be entitled to relief. Id. at 493, 495, 393 A.2d 610. Moreover, injunctive relief is particularly appropriate in these types of cases. Id. at 496, 393 A.2d 610.
Most significantly, our Supreme Court, in analyzing whether § 14 should be applied retroactively to leases executed before July 1, 1971, specifically noted that this "new statute replaced N.J.S.A. 40:60-42" and for the first time "requires public bidding for leases of unused municipal property." Wasserman's Inc. v. Middletown Tp., 137 N.J. at 243, 645 A.2d 100. That is, contrary to N.J.S.A. 40:60-42, § 14(a) "requires public bidding if a municipality proposes to lease property to a private person." Ibid. The Supreme Court never mentioned § 24, even though the language of § 24 is identical to N.J.S.A. 40:60-42 which the Court said that § 14 "replaced." See ibid. The Wasserman's Court went on to note that N.J.S.A. 40:60-42 had not required public bidding for a lease to a private party, only that the "`person pay the highest rent therefor.'" 137 N.J. at 245, 645 A.2d 100. This conclusion puts to rest any seeming controversy regarding the proper interpretation to be given to § 24. Therefore, if N.J.S.A. 40:60-42 has been replaced by § 14, we cannot ascertain what purpose the current § 24 serves.
The rule of construction that statutes which deal with same matter or subject and seek to achieve the same overall legislative purpose should be read in pari materia most obviously applies when statutes in question were enacted during same session or went into effect at same time, or where they make specific reference to one another. Mimkon v. Ford, 66 N.J. 426, 433-34, 332 A.2d 199 (1975).
We believe § 14 prevails over § 24. Otherwise, no public bidding would be required for leasing public land and buildings not presently needed "to the person who will pay the highest rent *289 therefor." We cannot reconcile why the Legislature would adopt a statute with conflicting language.
Because plaintiff only wanted the cellular communications facility to be somewhere other than in his own neighborhood, that does not mean that plaintiff, as a municipal taxpayer, does not have the requisite standing. See L. Pucillo & Sons, Inc., v. Belleville Township, 249 N.J. Super. 536, 543, 592 A.2d 1218 (App.Div.), certif. denied, 127 N.J. 551, 606 A.2d 364 (1991).
We reverse because of the borough's failure to submit the lease to public bidding, in conformance with N.J.S.A. 40A:12-14(a).

II.
Plaintiff also contends that the borough acted arbitrarily, capriciously and unreasonably in executing this lease because it failed to consider the detrimental effects of this particular use on the neighboring community.
Essentially, plaintiff's right to challenge the potential detrimental effects of this proposed use will come when he appeals the planning board's decision to grant site plan approval for the use. We denied plaintiff's motion for leave to appeal from that decision.
The only action before us is the "borough litigation." We did not afford any of the parties an opportunity to prove or disprove the detrimental effects, if any, of the use. There was no testimony taken before the trial judge; he merely concluded that there was nothing before him which would indicate that the municipality had failed to comply with its own zoning ordinances. At the time of the judge's decision, Bell Atlantic had its site plan application pending before the planning board. We assume that the application was granted because, at oral argument, we were told that improvements have been completed.
We further assume that a remand for a hearing on this issue is unnecessary because of plaintiff's appeal of the "planning board litigation."
Since the trial court's decision, we decided Nynex Mobile Communications Co. v. Hazlet Township, 276 N.J. Super. 598, 648 A.2d *290 724 (App.Div. 1994). We held that a proposed cellular communications tower was an inherently beneficial use for purposes of the zoning laws, notwithstanding its commercial for-profit nature. Id. at 609, 648 A.2d 724. With respect to the detrimental effects of such proposed uses, the Nynex court concluded that "the so-called health and safety issues are nothing but rank speculation." Id. at 612, 648 A.2d 724.
On the other hand, plaintiff has brought to our attention Criscuola v. Power Authority of the State of New York, 81 N.Y.2d 649, 602 N.Y.S.2d 588, 621 N.E.2d 1195 (Ct.App. 1993), which he claims supports the proposition that the Mayor and Council should have considered the public's perception that a transmitting facility, such as that proposed, may be dangerous, and should therefore have considered the effect such perception would have on local property values, even though plaintiff is unable to present proof that a danger actually exists.
We reverse that part of the order of May 24, 1994, which held that the subject lease was not subject to public bidding and remand for the trial court to restrain the borough from enforcing its lease with Bell Atlantic.
NOTES
[1] The optionee/tenant was actually SMSA Limited Partnership, a limited partnership in which Cellular Geographic Service Area, Inc., a subsidiary of Nynex Mobile Communications Company, was the General Partner. At some point, Nynex became known as Bell Atlantic.
[2] Plaintiff never changed the caption to reflect Bell Atlantic's full name.
[3] Inasmuch as the other judge had ruled on all the issues before him, whether public bidding was required and whether the proposed use was a permitted one in the zone, there was not any such issue then pending.
[4] N.J.S.A. 40A:12-15 applies to leases made for particular public purposes. That provision is not at issue here.