**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4120-16T4

A.O.,

    Plaintiff-Appellant,

v.

N.D.,

    Defendant-Respondent.

_____

        Submitted May 9, 2018 — Decided July 12, 2018

        Before Judges Alvarez and Nugent.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Monmouth
        County, Docket No. FD-13-0143-15.

        Miller & Gaudio, PC, attorneys for appellant
        (David R. Cardamone, on the brief).

        Respondent has not filed a brief.

PER CURIAM

    Plaintiff A.O., who by way of a consent order was designated

as the "psychological parent"[1] of the biological child of defendant

_____

[1]   See V.C. v. M.J.B., 163 N.J. 200, 227, 230 (2000) (a
psychological parent is a person who with the consent of the

N.D., appeals from a May 3, 2017 Family Part order that denied her motion to either enforce an alleged agreement, award joint legal custody of the child, modify parenting time, or conduct a plenary hearing.[2] After consideration of the arguments, record, and relevant law, we affirm.

The parties and the child lived together as a family until 2014, when the child was four. Plaintiff's subsequent complaint for custody, parenting time, and to be named the child's psychological parent was resolved by a November 18, 2014 consent order. The agreement required the parties to designate an expert with the intent for him or her to produce a report and recommend a parenting time schedule.[3] A later February 19, 2015 order modified parenting time.

Finally, on June 15, 2015, a third, more detailed consent order was entered. The preamble to that order indicated that the agreement "eliminat[ed] the need for the [p]lenary [h]earing presently scheduled for July 31, 2015."

---

biological parent, "live[d] in familial circumstances with a child and [the] legal parent" and achieved "a psychological parent status vis-a-vis a child," which may not unilaterally be terminated by the legal parent. Such persons "stand[] in parity with the legal parent."

[2] Defendant's answering brief was suppressed.

[3] It is not clear if the parties employed an expert for that purpose.

A-4120-16T4

Because the parties continued to have conflicts, plaintiff filed a fourth application seeking mandatory co-parenting therapy and joint legal custody, among other things. The parties' attorneys were again seemingly able to negotiate an agreement. Plaintiff signed a fourth consent order, which her attorney forwarded to defendant's counsel for defendant's signature. After some time passed, defendant's attorney informed plaintiff's counsel that defendant refused to sign the agreement until additional changes were made. Accordingly, plaintiff filed the application at issue seeking to enforce the unsigned consent order, or in the alternative, seeking to be granted joint legal custody, modification of parenting time, and requiring the parties to attend co-parenting therapy.

Defendant opposed plaintiff's motion to enforce, asserting the terms of the consent order were simply never agreed upon. Defendant acknowledged he had violated the June consent order by making his new fianceé, instead of plaintiff, the child's secondary emergency contact.

When the judge conducted oral argument, he was initially confused regarding the relief sought by plaintiff. He summarized plaintiff's prayers for relief as including: "joint legal custody, ordering the parties to attend co-parenting, and three, modification of parenting schedule . . . . It doesn't ask for an

enforcement or a finding that a consent order is or was -- was agreed upon, or there was an agreement." The judge likely had this understanding because plaintiff failed to list that initial prayer for relief—enforcement of the unsigned consent order—in the court's boiler plate notice of motion form. However, she clearly requested it in the notice of motion drafted by her attorney. Regardless of the confusion, the trial judge ultimately considered and ruled on all of plaintiff's prayers for relief.

The judge denied enforcement of the unsigned consent order, or a plenary hearing on the issue, because plaintiff failed to make a "prima facie showing that a consent or an agreement was reached." He denied plaintiff's request for joint legal custody and a modification in parenting time because he found no "substantial change in circumstances" to warrant either. Finally, the judge ordered the parties to attend a second co-parenting class, without specifically ruling on the request for co-parenting therapy.

Plaintiff raises two points on appeal:

> POINT I
> THE TRIAL COURT ERRED IN FAILING TO ORDER A
> PLENARY HEARING TO DETERMINE WHETHER A BINDING
> VERBAL AGREEMENT HAD BEEN REACHED BY AND
> BETWEEN THE PARTIES.
> POINT II
> THE TRIAL COURT ERRED IN FAILING TO GRANT
> APPELLANT'S REQUEST, OR TO ORDER A PLENARY

4                                                          A-4120-16T4

HEARING IN LIEU THEREOF, FOR JOINT LEGAL CUSTODY, A MODIFICATION IN PARENTING TIME AND MANDATORY ATTENDANCE AT CO-PARENTING THERAPY

    A. The Trial Court Erred in Failing To Grant Appellant Joint Legal Custody Based Upon the Best Interests of the Minor Child

    B. The Trial Court Erred in Failing to Modify the Parenting Time Schedule Based Upon the Best Interests of the Minor Child

    C. The Trial Court Erred in Failing to Order the Parties to Attend Co-Parenting Therapy

I.

The scope of appellate review of a trial court's findings of fact is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. A reviewing court will only disturb the findings when they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interest of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of No. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, the trial judge's legal conclusions, and the application of those conclusions, are subject

to plenary review. <u>Manalapan Realty, L.P. v. Twp. Comm.</u>, 140 N.J. 366, 378 (1995).

It is equally well-established that a plenary hearing is necessary when a genuine issue exists as to a material fact. <u>Tretola v. Tretola</u>, 389 N.J. Super. 15, 20 (App. Div. 2006). A plenary hearing is only necessary to resolve a genuine issue of a material fact, as "trial judges cannot resolve material factual disputes upon conflicting affidavits and certifications." <u>Harrington v. Harrington</u>, 281 N.J. Super. 39, 47 (App. Div. 1995) (citation omitted); <u>see</u> <u>Eaton v. Grau</u>, 368 N.J. Super. 215, 222 (App. Div. 2004). A plenary hearing is usually appropriate before the entry of an order affecting the custody of a child. <u>See</u> <u>Fusco v. Fusco</u>, 186 N.J. Super. 321, 327-29 (App. Div. 1982). However, where a prior court order exists specifying the terms of residential custody and parenting time, a parent seeking to alter those terms has the burden of demonstrating a material change in circumstances. <u>Hand v. Hand</u>, 391 N.J. Super. 102, 105 (App. Div. 2007).

"Settlement of litigation ranks high in our public policy." <u>Nolan v. Lee Ho</u>, 120 N.J. 465, 472 (1990) (citation omitted). However, unless there is "an agreement to the essential terms" by the parties, there is no settlement in the first place. <u>Mosley v. Femina Fashions, Inc.</u>, 356 N.J. Super. 118, 126 (App. Div.

2002). The burden of proving that the parties entered into a settlement agreement is on the party seeking to enforce it. Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997).

When there is a disputed motion to enforce a settlement, "a hearing is to be held to establish the facts unless the available competent evidence, considered in a light most favorable to the non-moving party, is insufficient to permit the judge, as a rational factfinder, to resolve the disputed factual issues in favor of the non-moving party." Id. at 474-75 (citation omitted). "[T]o be enforceable, matrimonial agreements, as any other agreements, need not necessarily be reduced to writing or placed on the record." Harrington, 281 N.J. Super. at 46. "Where the parties agree upon the essential terms of a settlement, so that the mechanics can be 'fleshed out' in a writing to be thereafter executed, the settlement will be enforced notwithstanding the fact the writing does not materialize because a party later reneges." Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993) (citing Bistricer v. Bistricer, 231 N.J. Super. 143, 145 (App. Div. 1987)); see also Pascarella v. Bruck, 190 N.J. Super. 118 (App. Div. 1983).

Nonetheless, unless an attorney is specifically authorized by the client to settle a case, the specific consent of the client

is generally necessary. <u>Jersey City v. Roosevelt Stadium Marina</u>, 210 N.J. Super. 315, 327 (App. Div. 1986) (citation omitted).

> Negotiations of an attorney are not binding on the client unless the client has expressly authorized the settlement or the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney had authority to enter into a settlement, not just negotiations, on behalf of the client.
>
> [<u>Amatuzzo</u>, 305 N.J. Super. at 475 (citing <u>U.S. Plywood Corp. v. Neidlinger</u>, 41 N.J. 66, 74 (1963)).]

A client may be bound to an agreement, in the absence of explicit or actual assent, when his or her attorney has the apparent authority to enter into it. <u>Id.</u> at 475-76. Such apparent authority may be created by words or conduct of the client that would lead "a person of ordinary prudence" to believe that the attorney had such authority. <u>Ibid.</u> "However, the attorney's words or acts alone are insufficient to cloak the attorney with apparent authority." <u>Id.</u> at 476.

## II.

We first address plaintiff's contention the trial court should have ordered a plenary hearing in order to determine whether a binding agreement was reached. Placing this dispute in context, given the number of consent orders these parties have entered into, it is clear they were familiar with the process. They knew

that until the orders were signed, they were not enforceable. The fact defendant wanted to negotiate additional terms before signing anything makes clear he believed no binding agreement had been reached. No matter the representations defendant's attorney may have made to plaintiff's counsel about defendant's willingness to sign the consent order as drafted, defendant ultimately did not agree, did not sign the consent order, and wanted to continue to negotiate.

Thus, this case is distinguishable from the cases plaintiff cites. The circumstances did not signal that defendant had given his attorney blanket final authority. Defendant's attorney never represented to his adversary that he had the final say with regard to the consent order, rather, he only represented that he would participate in negotiations. The ultimate authority rested with defendant and would be exercised only by his signature.

### III.

Nor do we agree that a plenary hearing is required on the remaining issues, plaintiff's second point. The judge applied the appropriate standard in rendering his decision, allocating to plaintiff the burden to demonstrate a prima facie case of substantial changed circumstances that alone would warrant modification of the existing custody and parenting time order. He found, to the contrary, that plaintiff had failed to do so. All

plaintiff had demonstrated was that defendant was noncompliant with details of the prior consent order, and that she wished to spend more time with the child. Thus, the record supports the judge's determination that plaintiff did not establish material disputes requiring a plenary hearing.

## IV.

We cannot discern whether the judge formally ruled upon plaintiff's request that the parties participate in co-parenting therapy, as opposed to the co-parenting class he ordered. They had previously attended such a class, and he required them to do so again. Based on this record, it is not reasonable, however, to remand in order for the judge to more formally explain the ruling. By ordering the parties to enroll in a second class as opposed to therapy, he elected a less burdensome alternative in the hope that the conflict would resolve itself in that fashion. Plaintiff's claims do not appear to us to require more than what the judge ordered.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4120-16T4